No. 71,776

LOIS DAVIDSON, *Appellant*, v. DALE DENNING, M.D., *et al.*, *Appellees*.

No. 72,260

TARYN DAWN RAILE, *et al.*, *Plaintiffs/Appellees*, v. NATIONWIDE AGRIBUSINESS INSURANCE COMPANY; CALDWELL'S, INC., a Kansas Corporation; and WILBUR STAATZ, *Defendants/Appellees*, and KARLENE BARRETT and GERALD BRANDENBURG, *Defendants/Appellants*.

(914 P.2d 936)

Opinion filed April 19, 1996.

*Michael E. Callen*, of Boddington & Brown, Chtd., of Kansas City, argued the cause, and *William H. Pickett, Richard D. Fry*, and *David T. Gries*, of William H. Pickett, P.C., of Kansas City, Missouri, were on the briefs for appellant Davidson.

*M. Warren McCamish* and *Phillip P. Ashley*, of Williamson & Cubbison, of Kansas City, were on the brief for appellee Denning.

*Anne Lamborn Baker*, of Wright, Henson, Somers, Sebelius, Clark & Baker, LLP, of Topeka, argued the cause, and *J. Lyn Entrikin Goering* and *Thomas E. Wright*, of the same firm, were with her on the briefs for appellee Lawrence Memorial Hospital.

*Michael P. Oliver*, of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, argued the cause, and *John M. Ross*, of the same firm, was with him on the brief for appellees Sosinski and Pees.

*Thomas M. Sutherland*, of Holbrook, Heaven & Fay, P.A., of Kansas City, argued the cause, and *Brent G. Wright*, of the same firm, was with him on the briefs for appellants Barrett and Brandenburg.

*Michael V. Foust*, of Goodland, argued the cause and was on the briefs for appellees Raile, *et al.*

*Steve R. Fabert*, of Fisher, Patterson, Sayler & Smith, of Topeka, argued the cause, and *Larry G. Pepperdine*, of the same firm, was on the briefs for appellees Nationwide Agribusiness Insurance Company, Caldwell's, Inc., and Wilbur Staatz.

The opinion of the court was delivered by

SIX, J.: The dominant issue before us in two wrongful death cases requires our determination of when K.S.A. 60-513(a)(5), the 2-year statute of limitations, commences to run. We granted petitions for review in conflicting decisions filed on the same day by different panels of the Court of Appeals. *Davidson v. Denning*, 21 Kan. App.

2d 225, 897 P.2d 1043 (1995), and *Raile v. Nationwide Agribusiness Ins. Co.*, No. 72,260, unpublished opinion filed June 23, 1995. Both cases involve the question whether the "fact of injury" was "reasonably ascertainable" at the date of death, so that 60-513(a)(5) began to run at death, or sometime later. *Davidson* is a medical malpractice case. *Raile* concerns a claim of negligent care against two ambulance attendants. The *Davidson* panel, rejecting *Clark v. Prakalapakorn*, 8 Kan. App. 2d 33, 648 P.2d 278, *rev. denied* 231 Kan. 799 (1982), held that plaintiff's claim was not barred, reversing the district court's dismissal of the action. The panel in *Raile*, following *Clark*, held that the statute of limitations had run and reversed the district court. *Davidson* is an appeal from summary judgment. K.S.A. 60-212(b)(6). *Raile* is before us as an interlocutory appeal. K.S.A. 60-2102(b); Rule 4.01 (1995 Kan. Ct. R. Annot. 23). The two cases have been consolidated for argument and decision. Rule 2.06 (1995 Kan. Ct. R. Annot. 16). Our jurisdiction is under K.S.A. 20-3018(b).

We hold that the claims in both cases are time barred.

The questions for review are:

(1) Did the *Davidson* district court err in considering matters outside the petition when ruling on defendants' motion to dismiss under K.S.A. 60-212(b)(6) and in determining that the action was time barred? The answer is, "No."

(2) Did the *Davidson* district court's interpretation of 60-513(a)(5) violate the Equal Protection Clause of the 14th Amendment to the United States Constitution and § 1 of the Kansas Constitution Bill of Rights? The answer is, "No."

(3) Did the *Raile* district court err in denying the defendants' motion to dismiss under K.S.A. 60-212(b)(6) and determining that the action was not time barred? The answer is, "Yes."

## FACTS

### *Davidson*

Buddy Dean Davidson was admitted to the Lawrence Memorial Hospital emergency room on February 9, 1991, for treatment of facial burns. His wife, Lois Davidson, told an emergency room nurse that Davidson previously had experienced trouble with blood

clots. The blood clot information was allegedly not conveyed to Davidson's treating physicians. Davidson died at the hospital on February 12, 1991, from a pulmonary embolism (blood clot obstructing the pulmonary artery between the heart and lungs). Davidson's physicians allegedly failed to: (1) take an adequate medical history, (2) diagnose pulmonary emboli, and (3) treat Davidson to prevent formation of blood clots. At the urging of Davidson's brother, Mrs. Davidson on March 11 and 12, 1991, spoke with an investigator from the offices of the attorneys that represented her in this case in the district court and in the Court of Appeals. During her discussion, she learned that because of her husband's history of blood clots, he would be prone to develop them again if he lay in bed for some time. She also learned that medication to thin her husband's blood could have been given to lessen the chance of blood clots forming and moving to the lungs. On March 4, 1993, Mrs. Davidson filed an action against the hospital, three doctors, and other medical personnel, alleging that her husband's death resulted from negligent medical care at the hospital. Her original petition alleged that she "was without knowledge of any negligence or causal connection with regard to any fault or negligence of any health care provider that caused or contributed to cause the death of Buddy Dean Davidson until March 4, 1991."

The doctors and the hospital filed motions to dismiss under K.S.A. 60-212(b)(6) for failure to state a claim, arguing the action was time barred. Davidson filed a motion to amend her petition "to more clearly state that while Plaintiff was aware of her husband's death on February 12, 1991, the earliest she could have known that there was a link between the death and any negligence of Defendants was March 4, 1991." The district court denied the motions to dismiss. The district judge's memorandum decision cited *Clark*, but stated: "*Clark* is a fact case as clearly signaled by the judges when they added the words 'in this case.' I am not willing to extrapolate it into authority for a motion to dismiss where the facts are not part of the pleadings."

Thereafter, two of the doctors and the hospital filed motions to reconsider the district court's ruling. Mrs. Davidson filed another motion to amend her petition, with a supporting memorandum

including more detailed factual allegations of Davidson's treatment and death. The memorandum also addressed her knowledge of her husband's treatment and death and attached answers to interrogatories describing her March 11 and 12, 1991, conversations with the investigator from her attorneys' office. She stated that she was not aware of the defendants' negligence until "after March 4, 1991." Some parties exchanged interrogatories, document production requests, and responses. The parties filed pretrial questionnaires, and a pretrial conference was held. Mrs. Davidson also filed a First Supplemental Pretrial Questionnaire which specified her theories of negligence.

The district court heard oral argument on: (1) the motions to reconsider, (2) Mrs. Davidson's motion to amend her petition, and (3) a pending motion for summary judgment filed by one of the physicians which is not part of this appeal. The *Davidson* panel's review of the record suggested that the district court may not have considered Mrs. Davidson's responses to certain interrogatories. She answered that she did not know until after March 4, 1991, that her husband was likely to develop blood clots if he lay in bed for an extended period or that medications could have been given to prevent the development of blood clots. 21 Kan. App. 2d at 229. We question the Court of Appeals' observation. The answers to interrogatories were attached to her motion to amend her petition. Mrs. Davidson's counsel stated at the district court hearing that he had nothing new to submit and stood on his previously filed memorandum opposing the motions to dismiss. The district court granted the motions to dismiss, relying on Mrs. Davidson's First Supplemental Pretrial Questionnaire setting forth in detail the theory of the claim and grounds for negligence. The district judge reasoned: "This is not a case in which the cause of death was not medically discernible, such as some of the early radiation damage cases. The theory is straightforward."

The district court also relied upon statements of Mrs. Davidson's counsel that no concealment was involved, observing: "Plaintiff makes no claim that medical records were altered, falsified, or in any manner concealed. When I inquired in oral argument, counsel for plaintiff confirmed this."

The district court determined that "we now have facts on the record." The district court made the following findings:

"I find the explanation for delay in determining the reason for death is not legally significant. The fact plaintiff contacted out-of-town counsel and a quick assessment of the potential action was made from available records demonstrates vividly that the information was reasonably ascertainable and that plaintiff was able to secure counsel.

"Under the facts and theory of plaintiff's case with no medical records altered, falsified, or concealed, the injury was reasonably ascertainable no later than the date of death. Everything with which to make a determination as to questions of negligence existed from that date forward."

The *Davidson* panel applied the standard of review applicable to summary judgment motions and reversed, declining to follow *Clark*:

"It does not terminate the discussion to say that, in this case, death is the 'fact of injury.' The fact of injury alone does not start the clock in motion. There must be knowledge not only of the fact of injury but also whose negligence caused the injury. In this case, the question is not when the appellant became aware of her husband's death. The question is when did she know or when should she have known that his death was caused by the negligence of the appellees. There is no logical reason to treat a negligently caused death differently than a negligently caused injury. This is what *Clark* does, and we cannot accept that premise." 21 Kan. App. 2d at 233.

## Raile

On the afternoon of December 31, 1990, a collision occurred between a pickup driven by Wilbur Staatz and a car driven by Tawnja Raile in Sherman County. The pickup broadsided the car on the driver's side. Taryn Raile, the infant daughter of Tawnja, was riding in the back seat of the car, secured in her child's car seat. Tawnja was apparently killed instantly. Almost immediately after the accident, Debbie Raile (step-grandmother of Taryn) was at the scene. Taryn had her eyes open and responded to Debbie's voice. Debbie held the child's hand briefly. Taryn was not moving her head, but was holding onto Debbie's little finger.

A state trooper arrived next. Taryn began making a gurgling, choking sound, and the trooper attempted to administer CPR. A sheriff's deputy helped bend the car body so that the child could be removed. At the time the sheriff's deputy first observed Taryn,

she appeared to be unconscious but breathing in rapid, short breaths.

The ambulance arrived as the state trooper removed Taryn from the car (approximately 55 minutes after the accident). According to the sheriff's deputy, the state trooper handed the child to Karlene Barrett, one of the defendant ambulance attendants, who carried the child, without using a back board, to the ambulance. Cynthia Strnad observed the ambulance attendants as Taryn was taken from the car to the ambulance. Although the ambulance attendants brought a back board and carried it to the car, it was not used. Barrett continued administering CPR enroute to the hospital. Gerald Brandenburg was the other ambulance attendant. At the hospital, Taryn was taken to the emergency room and pronounced dead on arrival by the physician on duty. The physician's report showed a diagnosis of "head trauma." The ambulance attendants' records showed that Taryn had no vital signs during the trip to the hospital.

Later that evening, Dr. McCullough, the coroner, examined Taryn's body at the mortuary after first visiting the accident scene. No autopsy was performed. The coroner completed a report of death, in which he stated that the child was killed instantly by the collision and that death was "from transection cervical spinal cord" (severing of the spinal cord). He had neither interviewed any of the people at the accident scene nor the hospital's duty physician.

On June 12, 1992, Richard Raile, father of Taryn, filed this action against Nationwide Agribusiness Insurance Company (Nationwide) (insurer of the pickup), Caldwell's, Inc. (the pickup owner), Wilbur Staatz (the pickup driver), and John Raile, as the administrator of the estate of Tawnja Raile, alleging negligence concerning the car accident. The parties exchanged discovery requests and responses, and took depositions. During the discovery process, it became clear that the defendants were going to request that their negligence be compared to that of the ambulance attendants, Barrett and Brandenburg. Raile's motion to add the two attendants as additional defendants was granted. Raile filed his first amended petition, adding Barrett and Brandenburg as defendants on December 29, 1993, almost 3 years after Taryn's death.

Barrett and Brandenburg filed a K.S.A. 60-212(b)(6) motion to dismiss, asserting that the wrongful death claim was time barred by the 2-year statute of limitations in K.S.A. 60-513(a)(5). Raile responded, contending that he could not reasonably have ascertained that the negligence of the ambulance attendants caused injury to Taryn until the coroner was deposed (August 3, 1993). The coroner concluded that death was instant, because once the spinal cord is severed, breathing stops. Raile asserted he did not know the ambulance attendants failed to use a back board until the deposition of Strnad on August 3, 1993. Counsel for Raile acknowledged that he interviewed Strnad a few days after the accident. The district court agreed with Raile's position and denied the motion to dismiss. The denial order included a K.S.A. 60-2102(b) finding necessary for an interlocutory appeal.

The *Raile* panel, following *Clark*, reversed the district court. The claim was time barred.

"The fact of [Taryn's] death, in our view, should have indicated a starting point for inquiry, and it is not illogical or unreasonable to assume that, when at least one family member knew that Taryn was alive after the accident but dead on arrival at the hospital, that the care and treatment administered by the emergency medical personnel responding to the accident scene might have been worth investigating.

"Nothing in the record suggests that any of the medical personnel, including the hospital or Dr. McCullough [the coroner], acted to conceal any evidence relating to McCullough's determination of the cause of death. The facts used to determine whether a cause of action existed against the ambulance crew were equally available to the plaintiffs had they decided to investigate that possibility. It is important to note that Raile made no effort to pursue this possibility until the *defense* raised the issue during discovery." (Emphasis in original.)

## DISCUSSION
### Summary Judgment—*Davidson*

Mrs. Davidson argued to the Court of Appeals that the district court should not have considered any matters beyond the pleadings in ruling on the motion to dismiss. As the *Davidson* panel correctly noted, the standard of review stated in *Blevins v. Board of Douglas County Comm'rs*, 251 Kan. 374, 381, 834 P.2d 1344 (1992), applies when the trial court has sustained a motion to dismiss. However, the panel also noted K.S.A. 60-212(b)(6) provides that if matters

outside the pleading are presented to and not excluded by the court, a motion to dismiss for failure to state a claim shall be treated as one for summary judgment. 21 Kan. App. 2d at 227.

The statements made by Mrs. Davidson or her counsel in: (1) the motions to amend the petition, (2) answers to interrogatories, (3) pretrial questionnaires, and (4) oral argument on the motions to dismiss are "admissions" and were therefore properly considered by the district court. All of the matters the district court considered beyond the face of the pleadings consisted of admissions from Mrs. Davidson. There were no contested facts.

The Court of Appeals was correct in applying the standard of review applicable to summary judgment motions. See *Fletcher v. Nelson*, 253 Kan. 389, 391, 855 P.2d 940 (1993) (rules relating to summary judgment reviewed.) Statutory construction is a question of law; thus, we have unlimited appellate review of the district court's interpretation of K.S.A. 60-513. *National Council on Compensation Ins. v. Todd*, 258 Kan. 535, Syl. ¶ 2, 905 P.2d 114 (1995).

## The District Court's Decision in *Davidson*

The district court's memorandum decision in *Davidson* does not expressly state that the court considered the defendants' motion to dismiss as a summary judgment motion. However, the court clearly considered matters beyond the face of the petition in granting the motion. At the time the motions to dismiss were initially heard and denied, the only facts in the record were from the petition, which alleged the date Davidson was admitted to the hospital, his date of death from pulmonary embolism, that defendants' negligence caused Davidson's death, and that Mrs. Davidson was without knowledge of the negligence until (later sought to be amended to "after") March 4, 1991. By the time the district court reconsidered the motions, Mrs. Davidson had filed two motions to amend her petition and a supporting memorandum, which contained the additional facts that: (1) Davidson had been admitted to the hospital for treatment of facial burns; (2) Mrs. Davidson had accompanied him to the hospital emergency room at the time of admission and informed the medical personnel on duty that her husband had trouble with blood clotting; and (3) this information was not relayed

to her husband's treating physicians, who failed to properly develop his medical history and treat him for prevention of blood clotting and the resulting pulmonary embolism. Attached to her memorandum were Mrs. Davidson's answers to certain interrogatories of Lawrence Memorial Hospital, in which she described her telephone conversations with the investigator from her attorneys' office on March 11 and 12, 1991. Mrs. Davidson had filed her pretrial questionnaire and a First Supplemental Pretrial Questionnaire, which detailed her theories of negligence. At oral argument on the motion to reconsider, Mrs. Davidson's counsel said that Mrs. Davidson was not aware of any causation between defendants' negligence and her husband's death until she visited with an investigator from her counsel's office on March 11, 1991. Counsel also said that there was no claim that any of the defendants had concealed any records or information. None of the defendants submitted any affidavits or other factual matter.

The record shows that the only matters the district court considered beyond the petition were Mrs. Davidson's own admissions. A litigant should not assume that the court will ignore admissions either made directly to the court or filed in the case when the court is making a dispositive ruling on that case. Mrs. Davidson was given a full opportunity to submit or argue anything further. The discretion of a district judge in considering a matter which does not appear on the face of the pleading must necessarily be broad when deciding a motion to dismiss. If it develops that the facts are not disputed, the issue is decided as a matter of law upon consideration of the pleaded facts plus the additional undisputed facts. 1 Gard's Kansas C. Civ. Proc. 2d Annot. § 60-212, Comments, pp. 65-66 (1979).

There was no error in the district court's consideration of matters beyond the petition.

## Nature of Wrongful Death Actions

K.S.A. 60-1901 provides:

"If the death of a person is caused by the wrongful act or omission of another, an action may be maintained for the damages resulting therefrom if the former might have maintained the action had he or she lived, in accordance with the

provisions of this article, against the wrongdoer, or his or her personal representative if he or she is deceased."

At common law no cause of action existed for wrongful death. In 1846 in England a wrongful death act was enacted, commonly known as Lord Campbell's Act, S. 9 and 10 Vict., ch. 93. The Kansas wrongful death statute has been construed similarly to Lord Campbell's Act. A wrongful death action authorized by K.S.A. 60-1901 *et seq.* is for the exclusive benefit of the heirs. *Mason v. Gerin Corp.*, 231 Kan. 718, 720-21, 647 P.2d 1340 (1982). The action may be brought only by an heir of the decedent "who has sustained loss by reason of the death." K.S.A. 60-1902.

In 1963, when the Code of Civil Procedure was revised and enacted in its present form, the 2-year limitation in the wrongful death statute was relocated to what is now K.S.A. 60-513(a)(5). Consequently, "[a]n action for wrongful death" is specifically listed as one that must be brought "within two years." We have observed that this revision was made for convenience and organizational purposes rather than to effect a change in the application of the wrongful death statute. *Mason*, 231 Kan. at 721.

Gard acknowledges that the discovery rule would apply to the wrongful death statute of limitations, but only, apparently, as to notice of death.

"Written into this section is the new provision which establishes the time of accrual of the cause of action as of the time when a substantial injury occurs from the tortious act. While the cause of action accrues at the time of the actual injury, the two-year statute of limitations does not necessarily begin to run at that time. In various types of injury it often cannot be reasonably ascertained as existing until some time after the commission of the wrongful act which causes it. . . . *In rare instances even an action for wrongful death may fall within the rule, where the fact of death has been effectively concealed*." (Emphasis added.) 1 Gard's Kansas C. Civ. Proc. 2d Annot. § 60-513, Comments, pp. 23-24 (1979).

The term "reasonably ascertainable" as applied in 60-513(b) and (c) in a wrongful death action suggests an objective standard based on an examination of the surrounding circumstances. See *Moll v. Abbott Laboratories*, 444 Mich. 1, 17-18, 506 N.W.2d 816 (1993) (applying the discovery rule to 3-year statute of limitations for product liability actions; "[w]hile the term 'knows' is obviously a

subjective standard, the phrase 'should have known' is an objective standard based on an examination of the surrounding circumstances").

We have not considered the question whether the discovery rule in 60-513(b) or (c) can extend the commencement of the wrongful death statute of limitations beyond the date of death. The Court of Appeals addressed the question in *Clark*, holding the death was the "fact of injury" which was "reasonably ascertainable" on the date of death. 8 Kan. App. 2d at 34.

In three cases decided after the 1963 legislative re-positioning of the wrongful death statute of limitations in what is now 60-513(a)(5) and the statutory expression of the discovery rule in what is now 60-513(b) and (c), we have referenced a limitation period for a wrongful death action. *Frost v. Hardin*, 1 Kan. App. 2d 464, 571 P.2d 11 (1977), *aff'd* 224 Kan. 12, 577 P.2d 1172 (1978); *Mason*, 231 Kan. 718; and *Crockett v. Medicalodges, Inc.*, 247 Kan. 433, 799 P.2d 1022 (1990). Neither *Frost, Mason,* nor *Crockett* considered the application of the discovery rule to the wrongful death statute of limitations.

"Under K.S.A. 60-513 a wrongful death action must be brought within two years of the date of death." *Frost*, 1 Kan. App. 2d at 465.

"This court recognized as early as 1912 in *Nesbit v. City of Topeka*, 87 Kan. 394, 124 Pac. 166, that a cause of action for personal injuries accrues to the injured party when he is injured, and a cause of action for wrongful death accrues to the heirs at the death of the injured party." *Mason*, 231 Kan. at 722.

*Nesbit* is a pre-discovery rule case. In *Frost*, the issue was whether a wrongful death action by minor children of a deceased father is barred by the statute of limitations because such an action would be barred if brought by their widowed mother. We held the children were not barred. 224 Kan. 12, adopting 1 Kan. App. 2d 464, Syl. ¶ 4. *Mason* considered whether a wrongful death claim based on the decedent's prior injury can exist if the statute of limitations has already expired on the injury claim at the time of death.

In *Crockett*, 247 Kan. at 439, we said: "*Clark* does not extend the statute of limitations for wrongful death actions, but, instead,

limits it to not more than two years from the date of death." *Crockett* involved a wrongful death action alleging medical malpractice against a nursing home and a doctor. *The heirs filed suit within 2 years of death but more than 2 years (and less than 4 years) after the last date of treatment*; consequently, *Crockett's* factual setting is not similar to either *Davidson* or *Raile*. The district court in *Crockett* granted summary judgment to the nursing home and the doctor, determining that the claims were time barred. We affirmed in part, but reversed as to the claims for negligent prescription and administration of medication. *Crockett* considered the applicability of the discovery rule to a malpractice claim that existed before death, not to the wrongful death statute of limitations. 247 Kan. at 442.

The discovery rule, as codified in subparagraphs (b) and (c) of 60-513, expressly applies to the 2-year wrongful death limitation at 60-513(a)(5). *Clark* used the terms "fact of injury" and "reasonably ascertainable" in discussing the applicable statute of limitations; thus, we view *Clark* to hold that the discovery rule, as codified in 60-513, applies to the wrongful death statute of limitations. *Clark* does not provide any facts concerning the alleged malpractice or the circumstances surrounding the death.

We applied the discovery rule to the statute of limitations in several medical malpractice cases involving living patients. In *Jones v. Neuroscience Assocs., Inc.*, 250 Kan. 477, 827 P.2d 51 (1992), the district court granted the defendants' motions for summary judgment, ruling the action was time barred. We reversed on the statute of limitations issues. 250 Kan. at 489. We cited *Cleveland v. Wong*, 237 Kan. 410, 701 P.2d 1301 (1985), and *Hecht v. First National Bank & Trust Co.*, 208 Kan. 84, 490 P.2d 649 (1971), as persuasive authority for our decision. 250 Kan. at 489.

*Jones* concerned the question of when an injury received from surgery first became "substantial," or permanent, after doctors had repeatedly assured Mrs. Jones that her condition would resolve over time. Neither in *Davidson* nor in *Raile* is there a suggestion that medical personnel made any inaccurate or misleading representations to Mrs. Davidson or Mr. Raile concerning the cause of death.

In *Cleveland*, plaintiff, experiencing recurrent urinary tract infection and other related problems, sought treatment from the defendant doctor, who performed a resection procedure on plaintiff's prostate on May 19, 1978. Plaintiff filed suit on August 14, 1980. The question of when plaintiff's injury was "reasonably ascertainable" and whether the action was therefore timely filed was submitted to the jury, which determined that the action was timely. We affirmed. *Cleveland*, like *Jones* and unlike either *Davidson* or *Raile*, involved a patient injured from surgery who was told by the treating surgeon and personal physician that the conditions were temporary and normal immediately following surgery. The passage of time revealed the physicians' statements to be wrong. Thus, plaintiff had no reason to suspect that the conditions were permanent or the result of malpractice. 237 Kan. at 414.

In *Hecht*, plaintiff was referred to the defendant doctors for radiation therapy for Hodgkin's disease in 1964 and received 20 treatments. In January 1966, plaintiff was diagnosed with a recurrence of Hodgkin's disease and was referred to defendants for additional x-ray therapy and treatment. *Hecht* also involved an injury that could not be evaluated as permanent until the passage of time. Plaintiff's doctors believed that the condition would heal.

We have applied the discovery rule in a non-malpractice personal injury case, *Gilger v. Lee Constr., Inc.*, 249 Kan. 307, 820 P.2d 390 (1991). The district court in *Gilger* granted summary judgment for defendants on statute of limitations grounds. The Court of Appeals reversed. *Gilger v. Lee Const., Inc.*, 14 Kan. App. 2d 679, 687-89, 798 P.2d 495 (1990). We affirmed the portion of the Court of Appeals opinion concerning application of the K.S.A. 60-513(b) discovery rule. *Gilger* also involved a situation where the tortfeasor made inaccurate representations to the injured plaintiff, forestalling plaintiffs' efforts to find the real cause. The injury in *Gilger* was ongoing, and plaintiffs continued to be harmed until the cause was determined and corrected. In *Davidson* and *Raile*, the injury was immediate and final.

*Friends University v. W. R. Grace & Co.*, 227 Kan. 559, 608 P.2d 936 (1980), a roof-leak case, provides guidance about when an injury becomes "reasonably ascertainable" within the meaning

of K.S.A. 60-513(b). The university's new library roof was completed in September 1969 and began to leak in 1970 or 1971. The university complained to the roofing company and manufacturers. Repairs were first attempted in 1970, but were not successful. Conferences and inspections were held, but the roofing company and manufacturers each denied liability. In April 1975, an independent expert determined that the cause of the leak was defective material supplied by W.R. Grace & Co., and the structure would require reroofing. The university filed suit on March 29, 1977, claiming negligence, strict liability in tort, and breach of implied warranty. The defendant manufacturers were granted summary judgment based on the statute of limitations. On appeal, the university argued that under 60-513(b), the statute of limitations did not commence to run until the expert's report was obtained, citing *Hecht* as authority. We disagreed with the university and affirmed summary judgment, stating:

"The new roof was obviously defective in some respect when leaking occurred. These defendants did not advise the plaintiff that the roof would heal itself or take any action to lull plaintiff into believing the problem was less severe than it appeared.

. . . .

"In the case before us a new roof on a new building was leaking. The cause had to be defective design, materials, workmanship, or some combination thereof. At any time Friends could easily have obtained an expert opinion on the precise cause or causes for the leaking roof." 227 Kan. at 562-65.

Although the above cases provide general guidance on the question of when the "fact of injury" is "reasonably ascertainable," none answer the question of how the discovery rule applies in wrongful death actions.

## Other Jurisdictions

A variety of positions can be found in a review of other jurisdictions concerning application of the discovery rule to the statute of limitations for wrongful death actions. See Annot., Medical Malpractice: Statute of Limitations in Wrongful Death Action Based on Medical Malpractice, 70 A.L.R.4th 535; Annot., Time of Discovery as Affecting Running of Statute of Limitations in Wrongful Death Action, 49 A.L.R.4th 972. Cases from other jurisdictions

should be viewed with caution, because the discovery rule may exist, if at all, only in the common law or it may be codified in different forms and limited only to certain causes of action.

## The *Davidson* Panel Decision

The *Davidson* panel aligned itself with the Illinois Court of Appeals in *Fure v. Sherman Hospital*, 64 Ill. App. 3d 259, 380 N.E.2d 1376 (1978).

The panel stated:

"Patients having an unexpected result from surgery are not required to immediately determine whether it was the result of malpractice. [Citation omitted.] Similarly, a decedent's heirs at law are not required to presume that the death was the result of negligence. A distraught surviving spouse or other heir cannot reasonably be expected to immediately begin investigating the cause of death in the absence of some reason to believe that malpractice occurred. See *Fure* . . . ." 21 Kan. App. 2d at 228-29.

Reliance on *Fure* is misplaced. In *Fure*, the widow argued that medical personnel did not explain the cause of death to her after she had been told her husband was being treated for a perforated abdominal ulcer. We read in *Fure* a rationale based on the Illinois court's concern with the medical personnel's lack of candor in explaining the cause of death to the widow. The death certificate later listed the cause of death in obscure medical terminology ("Mallory Weiss Syndrome," meaning perforated esophagus). 64 Ill. App. 3d at 271. In *Davidson*, Mrs. Davidson does not claim she did not know or understand the cause of death (pulmonary embolism). She also was well aware of her husband's medical history and problems with blood clotting and had described that to the hospital staff at the time her husband was admitted. The idea that a distraught surviving heir or spouse should have a grace period for bereavement is questionable. Should all distraught heirs be given a grace period before a statute of limitations would otherwise commence in a wrongful death action? For how long? Should some plaintiffs, for example, a widow with children versus a widower without, be given a longer grace period than others? Would entitlement to or length of a grace period be yet another issue for the trier of fact? In addition, even if a wrongful death plaintiff has no

suspicion of malpractice at the time of the decedent's death, how will a claim be revealed without some investigation?

An additional problem with the reasoning in *Fure* is that a wrongful death action based on medical malpractice presents a different fact situation than a medical malpractice action involving a surviving patient. The surviving patient is available for future examination and treatment. The decedent is not. The surviving patient's condition may change. The decedent's will not. Records will continue to be generated during the treatment of a living being. Records concerning a decedent are generally completed at the time of death. The *Davidson* panel appears to equate "reasonably ascertainable" with "actual knowledge."

K.S.A. 60-513(b) and (c) provide that the limitations period starts when the "fact of injury" becomes "reasonably ascertainable." Inherent in "to ascertain" is "to investigate." The district judge interpreted "reasonably ascertainable" to mean that the limitations period should start when the information from which negligence can be determined existed. The *Davidson* panel strongly disagreed with the district judge's interpretation, stating:

> "In effect, the trial court ruled as a matter of law that malpractice is reasonably ascertainable if the medical records are available and unaltered and an examination by someone with medical knowledge would disclose that the death was caused by malpractice, regardless of whether the survivors had any actual knowledge of malpractice or any reason to suspect malpractice. Such is not the law of this state." 21 Kan. App. 2d at 230.

The *Davidson* panel viewed the district court's ruling too broadly. The district judge determined that the theory of negligence was straightforward. The defendants failed to properly diagnose and treat the decedent for blood clotting after receiving notice that he had a history of clotting problems. This resulted in death from clotting. The judge also noted that upon Mrs. Davidson first contacting counsel, the claim was quickly assessed from the available records.

Mrs. Davidson first visited with an investigator from her counsel's office by telephone on March 11, 1991, less than a month after the death, and she acknowledges that because of that discussion, she first became aware of possible negligent causation. The

promptness in contacting counsel suggests at least suspicion that something was wrong. Yet, the lawsuit was not filed until March 4, 1993. Mrs. Davidson's counsel explained that the reason for this delay was her failure to contact counsel. The district court made a fact-specific determination that the "fact of injury" was "reasonably ascertainable" as of the date of death—not a ruling that availability of records will trigger the limitations period, as a matter of law, even when there is no reason to suspect malpractice.

We agree with the district judge's analysis.

Mrs. Davidson challenges the constitutionality of the district court's interpretation of K.S.A. 60-513(a)(5). She contends the interpretation eliminates the 60-513(b) or 60-513(c) discovery period and strictly limits wrongful death plaintiffs to filing suit within 2 years of the date of the death. We need not reach the constitutional issue, as we hold the discovery rule applied to Mrs. Davidson's claim. There is nothing on the face of K.S.A. 60-513 that creates a separate class consisting of wrongful death plaintiffs and singles them out for different application of the discovery rule. If application of the discovery rule in a wrongful death case produces a different result than in a personal injury case, the difference should be based on the facts.

The district court's decision was based upon factual findings in this case, not on Mrs. Davidson's status as a wrongful death plaintiff. Thus, the district court did not need to address the merits of Mrs. Davidson's equal protection argument, because it did not apply.

### Raile

Barrett and Brandenburg argue that: (1) 60-513(c) does not apply to them, because they are not health care providers as defined by K.S.A. 40-3401(f), and (2) the claim against them is for simple negligence, so 60-513(b) should apply. The relevant discovery rule language in 60-513(b) and (c) is the same. At oral argument before this court, counsel for Barrett and Brandenburg conceded that for purposes of deciding the issues in this appeal, it should make no difference whether 60-513(b) or (c) were to apply. It does not

matter whether Barrett and Brandenburg are considered health care providers.

### The District Court and Court of Appeals Decisions

The standard of review applicable to *Raile* is the same as *Davidson*. The district judge in *Raile* considered matters outside the petition in ruling on the K.S.A 60-212(b)(6) motion to dismiss. Raile submitted portions of the depositions of several witnesses in response to the motion. Therefore, the motion should be treated as one for summary judgment.

The district judge in *Raile* did not view *Clark* as establishing "as an absolute" that a wrongful death action could not be brought more than 2 years after the date of death. Rather, he determined, for purposes of the motion to dismiss only, that: (a) the acts of the ambulance attendants in removing Taryn to the ambulance without a head or neck restraint occurred on December 31, 1990; (b) these acts were not reasonably ascertainable until August 3, 1993; (c) the fact of injury arising from the acts of the ambulance attendants was the transection of the cervical spinal cord; and (d) the fact of injury was not reasonably ascertainable to the plaintiff until August 3, 1993.

The district judge in *Raile* interpreted "reasonably ascertainable" to mean "actual knowledge." Raile did not connect the ambulance attendants' failure to use a back board with any injury to Taryn until the coroner testified at his August 3, 1993, deposition that the cause of death was a severed spinal cord. In the coroner's opinion, someone with a severed spinal cord could not breathe and would die immediately. Raile made the connection at that point, realizing from Debbie Raile's testimony that Taryn was conscious and breathing for a time after the accident and before the arrival of the ambulance.

All of the information that Raile needed to make that connection was available as of the date of death. The coroner made an examination and completed a report. That fact was no secret. At least two witnesses (Strnad and the deputy) observed the failure of the ambulance attendants to use a back board. At least two witnesses observed Taryn breathing after the accident (Debbie Raile and the

deputy). The state trooper who administered CPR to Taryn and handed her to the ambulance attendant was deposed, although none of his deposition transcript is included in the record. There is nothing in the record suggesting any of these witnesses were inaccessible.

The *Raile* panel applied *Clark*, which held that the "fact of injury" means the "fact of death." We agree. The term "reasonably ascertainable" implies some obligation to investigate the factual sources available after a tragic death. The limitations period should start on the date of death unless the information from which the fact of death or negligence can be determined was either concealed, altered, falsified, inaccurate, or misrepresented. The fact of death should be a "starting point for inquiry." The wrongful death plaintiff is charged with constructive knowledge of information that is available through a reasonable investigation of sources that contain the facts of the death and its wrongful causation.

Raile takes issue with the Court of Appeals' statement that "Raile made no effort to pursue this possibility [of negligence by the ambulance attendants] until defense the raised the issue" during discovery. The Court of Appeals' statement is supported by the record. Raile did not file his amended petition adding the ambulance attendants as defendants until December 29, 1993. Raile's actions were in response to the information that came out during discovery efforts by both sides.

"Reasonably ascertainable" does not mean "actual knowledge." The district court is reversed, and the Court of Appeals is affirmed.

The original defendants in *Raile* filed no response to the motion to dismiss by Barrett and Brandenburg in the district court. However, they did file a brief as appellees in the Court of Appeals raising two issues for the first time. They also filed a supplemental brief as appellees with this court. We choose not to address issues raised for the first time on appeal. See *Hephner v. Traders Ins. Co.*, 254 Kan. 226, 231, 864 P.2d 674 (1993).

The discovery rule, as codified at K.S.A. 60-513(b) and (c), states that the limitations period starts when the "fact of injury" is "reasonably ascertainable." The phrase "reasonably ascertainable"

means that a plaintiff has the obligation to reasonably investigate available sources that contain the facts of the death and its wrongful causation. Those facts appear to have been available in both *Davidson* and *Raile* as of the date of death, more than 2 years before the actions were filed.

We have not established a "bright line" rule that the wrongful death limitations period may never be extended beyond 2 years from the date of death. Here, there were no circumstances present justifying an extension, such as concealment of the fact of death or of medical records nor a misrepresentation, alteration, inaccuracy, or falsification of any type.

For a discussion of the policy rationale justifying statutes of limitations, see *Stephens v. Snyder Clinic Ass'n*, 230 Kan. 115, 132, 631 P.2d 222 (1981) (affirming an unfortunate result as the injury to the plaintiff was not ascertainable until after the statute of limitations extinguished her right to bring the action).

In *Davidson*, we reverse the Court of Appeals and affirm the district court; in *Raile*, we affirm the Court of Appeals and reverse the district court.