LYNDA FURE, Adm'r of the Estate of Duane Fure, Deceased, Plaintiff-Appellant, *v.* SHERMAN HOSPITAL *et al.*, Defendants-Appellees.

Second District   No. 77-177

Opinion filed September 25, 1978.—Rehearing denied October 20, 1978.

260

A. J. Hardiman, of Chicago, for appellant.

Robert S. Soderstrom, of McKenna, Storer, Rowe, White & Farrug, and Hinshaw, Culbertson, Moelmann, Hoban & Fuller, both of Chicago, and Mountcastle & DaRosa, of Wheaton, for appellees.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

This appeal arises out of the dismissal of a complaint brought by the surviving widow and administrator of the estate of Duane Fure, deceased, under the wrongful death statute (Ill. Rev. Stat. 1975, ch. 70, pars. 1 and 2).

Duane Fure, the plaintiff's decedent, suddenly became ill and was admitted to the defendant hospital January 13, 1973. He was given emergency treatment and his illness was diagnosed as pertaining to an ulcer. An exploratory laparotomy (excision of part of the abdominal wall) was performed and X rays were taken of areas related to the possibility of an ulcer. The decedent continued to grow worse, experienced difficulty in breathing and expired January 15, 1973.

The original complaint in this case was filed November 1975, more than two years after Duane Fure's death. It contained three counts, count I

being for pecuniary damages for loss of support, etc. suffered by the next of kin; count II being for pain and suffering of the decedent before his death, and count III being for medical and funeral expenses. Subsequently, May 18, 1976, a second suit was filed by the same plaintiff, identical to the first, except that it added as a defendant a corporation with whom two of the defendant doctors were associated, General & Vascular Surgery, Ltd. On motion of the defendants the two cases were consolidated and transferred from Cook County, where the original suit had been brought, to Kane County. The motion to dismiss one of the defendants, Dr. Feldman, was granted. This ruling was appealed and according to the appellant's brief is pending in the First District as a separate appeal.

The plaintiff later amended her complaint by expanding count I as to certain facts and by adding another count, count IV, which alleged that certain committee meetings or review panels attended by the defendant doctors made findings to the effect that the treatment of the decedent was either negligent or substandard, that the defendants were aware of such findings and that "it then and there became the duty of each of the defendants to notify the decedent's next of kin of such findings," and their failure to do so was a breach of said duty.

The defendants moved to dismiss the complaint on the ground that the action was not brought within two years of the date of the decedent's death as required by section 2(c) of the Wrongful Death Act (Ill. Rev. Stat. 1975, ch. 70, par. 2(c)) which states:

> "Every such action shall be commenced within 2 years after the death of such person."

The plaintiff then filed her "Affidavit, Argument and Brief" in opposition to the motion to dismiss in which she invoked section 21.1 of the Limitations Act (Ill. Rev. Stat. 1975, ch. 83, par. 22.1) which reads in part as follows:

> "No action for damages for injury or death against any physician or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action, whichever of such date occurs first, but in no event shall such action be brought more than 5 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death."

The plaintiff argues that since the medical records made it abundantly clear that there had been an erroneous diagnosis and the decedent was

treated and operated on for a perforated ulcer when he actually was dying of a perforated esophagus, and since she was never advised of the actual cause of death and did not know the actual cause of death of the decedent until the fall of 1975, she had, by filing suit in November of 1975, acted within the time limitation set out in section 21.1 of the Limitations Act regarding wrongful death arising from patient care.

The plaintiff thus took the position that section 21.1, (a) governs the period within which a wrongful death action rising out of medical malpractice may be brought and (b) extends that period to 2 years from the time the decedent's representative knew or through the use of reasonable diligence should have known of the cause of death. The plaintiff cites the case of *Lipsey v. Michael Reese Hospital* (1970), 46 Ill. 2d 32, in arguing that the period of limitations does not begin to run until the *negligence* is discovered—thus extending the "discovery rule" adopted in *Rozny v. Marnul* (1969), 43 Ill. 2d 54, to malpractice cases generally.

The defendants' position, both in the trial court and in this appeal, is that in the first place a wrongful death action is purely statutory and the bringing of the action within 2 years is a condition precedent and not a mere limitation which might be waived or modified by circumstances or by the defendants' conduct. (See *Hartray v. Chicago Railways Co.* (1919), 290 Ill. 85, and *Country Mutual Insurance Co. v. National Bank* (1969), 109 Ill. App 2d 133.) But in any event, the defendants say even section 21.1 of the Limitations Act which the plaintiff invokes does not help her even if applicable to a wrongful death action, because it specifically limits such an action, based on patient care, to the same 2 years as does the wrongful death statute by the following language:

> "No action for damages for injury or death against any physician or hospital * * * arising out of patient care shall be brought more than 2 years after the date on which the claimant knew * * * of the injury or death for which damages are sought in the action * * *." Ill. Rev. Stat. 1975, ch. 83, par. 22.1.

Since the plaintiff obviously knew of the decedent's death more than 2 years before she brought the action, the defendants contend she is barred by the limitations statute as well as under the general concept of the Wrongful Death Act as requiring suit to be brought within 2 years as a condition precedent.

After hearing argument on various motions of the parties, the trial court issued its final order dated January 31, 1977, dismissing counts I, II and III of the complaint, which together with a previous order of January 17, dismissing count I, are the orders here appealed from.

In this appeal, the plaintiff raises five issues, which for the sake of convenience, we have combined into three, as follows:

(1) Whether in an action for wrongful death resulting from patient care the "discovery" rule may be applied as to the time within which the action may be brought;

(2) Whether the court erred in its ruling refusing to require the defendants to produce (a) medical records of the decedent and medical and general bylaws of the defendant hospital and (b) records concerning any medical committee reviews, or in the alternative to allow the court to conduct an in camera inspection of such records, or to allow the taking of the depositions of the medical review committees themselves, and

(3) Whether it is an actionable breach of duty for a hospital or a doctor having actual knowledge of medical malpractice as regards a deceased patient to fail to disclose such information to the deceased patient's representative.

■■ At the outset, we note that while counsel and the trial court all assumed count IV of the amended complaint had been dismissed by a previous judge, we do not find the record to so indicate. The judge merely ruled on certain portions of a discovery motion related to count IV, but did not dismiss count IV. Nor is the assumed dismissal of count IV one of the points raised in the notice of appeal, which does not mention that count. On the other hand, the issue raised in "Point 3" above, as an issue for review on this appeal, contains the very gist of count IV. Under these circumstances, in order to avoid unnecessary time and effort in the trial court, and since all parties are apparently under the impression that count IV was dismissed, we exercise our prerogative under Supreme Court Rule 366 (Ill. Rev. Stat. 1975, ch. 110A, par. 366) and give the judgment which should have been and was assumed to have been given below as to count IV. In our opinion, this count fails to state a cause of action. The mere failure to disclose a possibly questionable diagnosis or course of treatment to a third party representing the deceased patient is, we think, a far cry from fraudulent concealment of an actual known fact or circumstance, and while the doctor has a fiduciary relationship to his patient, not to deceive him or withhold vital information from him, we think this fiduciary aspect does not extend to a deceased patient's legal representative to the extent that the doctor is required to charge himself with professional negligence where he is conscious that his treatment was mistaken or incomplete, in order to assist such legal representative in the furtherance of an action against the doctor.

We hold, therefore, that if count IV was not dismissed as has been assumed by the parties, it would have been proper for the trial court to have done so, for failure to state a cause of action, and in order to remove uncertainty we will treat it as having been properly dismissed.

■■ ■ One more preliminary matter should be considered and disposed of. The plaintiff raises in her brief, though not specifically in her notice

of appeal, two rulings of the trial court on a discovery motion. These related to (a) a demand for discovery of certain general and medical bylaws of the defendant hospital and the decedent's medical records and (b) requested production or disclosure in camera to the court of reports of minutes of medical review panels. We think there can be no question that the material requested in the nature of general and medical bylaws of the hospital, as well as the patient's medical records, are clearly discoverable and the trial court's sweeping rejection of certain paragraphs of the plaintiff's motion was too broad in this respect. On the other hand, we note the questions raised as to the discovery of the reports of medical care evaluation committees by section 1 of "An Act providing for the confidential character of medical studies * * *" (Ill. Rev. Stat. 1975, ch. 51, par. 101), reading as follows:

> "All information, interviews, reports, statements, memoranda or other data of the Illinois Department of Public Health, Illinois State Medical Society, allied medical societies, or in-hospital staff committees of accredited hospitals, but not the original medical records pertaining to the patient, used in the course of medical study for the purpose of reducing morbidity or mortality shall be strictly confidential and shall be used only for medical research."

While the plaintiff contends in her brief that the above-quoted statute constitutes special legislation and is unconstitutional, we do not think the constitutional issue was properly preserved as an issue on this appeal. It was not, so far as we can discern from the record, raised in the trial court and was not ruled on there. Nor is it an issue which it is necessary to rule on in deciding this appeal. We, therefore, do not consider it here. *People ex rel. Milos v. Kutschke* (1969), 42 Ill. 2d 405; *In re Estate of Ersch* (1963), 29 Ill. 2d 572.

We come now to the main questions presented by this appeal—(1) whether the cause of action is absolutely barred by the limitations' period stated in the wrongful death statute (Ill. Rev. Stat. 1975, ch. 70, pars. 1 and 2) or (2) whether the "discovery" doctrine applied to malpractice actions in *Lipsey v. Michael Reese Hospital* (1970), 46 Ill. 2d 32, and the subsequent modification of the limitations statute—section 21.1 (Ill. Rev. Stat. 1975, ch. 83, par. 22.1) (effective November 11, 1975, in accordance with that decision) can properly be construed as modifying the absolute bar to a wrongful death action not brought within 2 years of the death. Finally, we must decide whether the discovery rule was intended to apply to wrongful death, as well as injury, and whether the circumstances of this case bring it within that doctrine.

Historically the limitation of 2 years for bringing an action for wrongful death has been regarded as a condition precedent, not modified or affected by the general statute of limitations. This has been the

interpretation of the limitations period of the Wrongful Death Act as enunciated by our supreme court in several cases. (See *Wilson v. Tromly* (1949), 404 Ill. 307; *Metropolitan Trust Co. v. Bowman Dairy Co.* (1938), 369 Ill. 222; *Hartray v. Chicago Railways Co.* (1919), 290 Ill. 85.) Hence, the defendants argue, the liberalization of the limitations statute by the so-called discovery rule as enunciated in *Rozny v. Marnul* (1969), 43 Ill. 2d 54, and first applied by our supreme court to a medical malpractice case in *Lipsey v. Michael Reese Hospital* (1970), 46 Ill. 2d 32, has no bearing on a wrongful death case since a wrongful death case is unique. Wrongful death cases are purely statutory and the limitations period set out in the statute is inherent in the right granted thereby. For this reason, the defendants say, a judicial modification of the limitations statute or even legislative changes not addressed specifically to the Wrongful Death Act do not affect that statute.

They further contend that neither the holding in the *Lipsey* case that "[w]e extend the rule of time of discovery followed by us in *Rozny* and hold that, in medical malpractice cases as this, the cause of action accrues when the person injured learns of his injury or should reasonably have learned of it," nor the amended Limitations Act, applies to the case at hand because in this case the patient died and was not merely injured, thus creating a different plaintiff who must seek her remedy under another and more limited statute—the Wrongful Death Act.

The plaintiff points out that following the *Lipsey* decision the legislature, amended section 21.1 of the Limitations Act, effective November 11, 1975 (which had previously provided for applying the discovery rule only where a foreign substance was left in the patient's body) to provide that a medical malpractice action could be brought within 2 years "after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action * * *." The plaintiff contends this amendment was a recognition of the "discovery" rule for extending the time for filing suit in medical malpractice cases and interprets the phrase "knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action" to mean that the action may be brought in any medical malpractice case within 2 years from the date the claimant knew, or should have known of the *negligence* which caused the injury or death. The plaintiff argues the term "injury" does not connote ordinary treatment or diagnosis but means "negligent treatment" or diagnosis; therefore, the term "injury" should be equated with negligent treatment or diagnosis resulting in injury and is, thus, to be equated in time with the claimant's first knowledge of such negligence.

The defendants, while contending that any liberalization of the limitations statute does not affect a wrongful death action since the limitation of time in the wrongful death statute is outside the general Limitations Act, argue that in any event even if applicable to the plaintiff's claim, the limitations statute only extends the time for filing suit to 2 years beyond knowledge of the decedent's death, since the phrase "or through the use of reasonable diligence should have known" is meaningless and cannot extend the time for filing suit in a case where the claimant was immediately aware, from an official death certificate, of the death of her husband.

We think the defendants are on thin ice in taking this position. We agree, as indicated in the recent case of *Roper v. Markle* (1978), 59 Ill. App. 3d 706, that the language of the holding in the *Lipsey* case—followed by the amendment to section 21.1 of the limitations statute—cannot safely be read in isolation and while the specific holding in the *Lipsey* case refers to the learning of an injury, the court did not state the case in those terms in framing the issue to be decided, but stated it in much broader terms, as follows:

> "The principal issue in this appeal is whether the two-year period of limitations for tort actions established in section 14 of the Limitations Act, (Ill. Rev. Stat. 1969, ch. 83, par. 15) began to run in October of 1963 at the time of the plaintiff's first surgery and the alleged negligence [in allowing a kidney to become infected which later became malignant], or at the time that the plaintiff discovered her true condition or should have known of it *and the defendants' claimed negligence.* If the latter standard should have been applied by the trial court, dismissal of the plaintiff's complaint on the ground that it was barred by the Statute of Limitations was improper." (Emphasis added.) (46 Ill. 2d 32, 37.)

Thus as pointed out in the *Roper* case, the supreme court in *Lipsey* did not by any means reject the idea that the statute may begin to run not when a certain physical condition is known to the plaintiff, but when the plaintiff is first aware that this condition arises from a negligent act of the defendant. To quote from the *Roper* opinion:

> "That in some types of cases an awareness of a physical problem also carries with it awareness of its wrongful causation, does not dictate a triggering of the limitations period in all malpractice cases when one becomes aware solely of a physical problem.
>
> We note that a different rule has been recognized as applicable when the injury involved is of a type which does not immediately put one on notice of its origination by negligent means. For example, in the chemical cases, *Wigginton v. Reichold Chemicals,*

*Inc.*, 133 Ill. App. 2d 776, 274 N.E.2d 118, and *McDonald v. Reichold Chemicals, Inc.*, 133 Ill. App. 2d 780, 274 N.E.2d 121, the plaintiffs developed illnesses of their respiratory systems but were unaware that the illness was caused by their exposure to defendant's product rather than some nonnegligent cause until some time later. The court stated the rule applicable to be:

'In cases involving a disease resulting from neglect, negligence or a defective product we believe that the more logical and tenable position is that the cause of action accrues and the statute of limitation begins to run when the diseased party discovered or should have discovered that he is ill as the result of some neglect on the part of another party or as the result of being wrongfully exposed to a defective product. [Citations.]'

We take note that the court indicated in both cases that it was applying the time of discovery rule as had been done in medical malpractice cases, citing *Lipsey* and section 21.1 of the Limitations Act (Ill. Rev. Stat. 1971, ch. 83, par. 22.1).

We believe the instant type of malpractice case is more analogous to the nontrauma cases than to trauma or foreign substance cases." 59 Ill. App. 3d 706, 711.

While we are dealing here with a death, rather than an injury, the broad conceptual aspect of the problem is the same since the defendants in both cases relate the triggering of the statute to the knowledge of a physical fact, even where the knowledge of such fact or condition in and of itself carries no import of being connected to the defendants. Thus, we have here a double defense, (1) the general arbitrary concept of the wrongful death statute itself as a condition precedent and (2) the failure to comply with the discovery rule, even if it applied.

It is clear, of course, that the legislature can change the wrongful death statute in any way it sees fit, within constitutional limits. It has done so on many occasions, including extending the time for filing suit thereunder to 2 years from the original 1 year of the first statute enacted in 1853, and several times increasing the amount recoverable under the statute. Nor is the 2-year period for bringing suit entirely beyond judicial construction. In *Kenney v. Churchill Truck Lines, Inc.* (1972), 6 Ill. App. 3d 983, the suit was not brought within the specified 2-year period but was allowed because the defendant was serving in the United States Air Force at the time the 2 years expired and the Soldiers and Sailors Relief Act tolled the statute.

In *Wilbon v. D. F. Bast Co.* (1977), 48 Ill. App. 3d 98, 102, a wrongful death action filed on behalf of the minor children of the decedent, and not

brought within two years, was allowed on the grounds of public policy, the court quoting from 3 Sutherland, Statutory Construction §7205, at 420-21 (1943), as follows:

" 'The death statutes represent a wholesome policy that has now become firmly imbedded in modern jurisprudence, and where the extent of the damages recoverable for wrongful death is measured by the actual injury sustained, these statutes should be liberally construed to accomplish their purpose.' "

The quotation cited above is certainly apposite to the present case, where the action was brought on behalf of four minor children of the decedent.

In *Praznik v. Sport Aero, Inc.* (1976), 42 Ill. App. 3d 330, the decedent was killed in an airplane crash which apparently occurred on the date of his disappearance on March 23, 1969. The wreckage of the aircraft, however, was not discovered until November of 1971, and the widow then filed suit for wrongful death against Sport Aero, Inc., the owner of the plane, and against Fey, as lessee thereof. The defendants pleaded the affirmative defense of the limitation of time for filing suit, which defense the trial court struck and certified the question for appeal. On appeal, the First Appellate Court District affirmed the trial court's action in striking the defense of failure to bring suit within 2 years set out in the wrongful death statute. The court said:

"While a wrongful death action is a right created by statute, and the time to commence an action may not be ignored, we are not convinced that in all cases the two-year period must begin to run at the moment of death, and all cases brought after that time period are barred." (42 Ill. App. 3d 330, 335.)

The court went on to say:

"There is nothing in the record to establish that defendant was prejudiced by the lapse of time between the actual date of decedents' deaths and the discovery of those deaths. In our opinion this is a proper cause for the application of the discovery rule." 42 Ill. App. 3d 330, 337.

Thus it appears that in several recent cases the appellate courts have rejected the theory that a wrongful death action is completely dead if an action is not brought on it within two years of the date of death. Since *Lipsey* and the subsequent amendment of section 21.1 of the Limitations Act have established the discovery rule as applying to medical malpractice actions, the question posed by the case at hand is whether the discovery rule can, in certain instances, apply to a wrongful death action where the date of death is known and does not have to be discovered, but the negligence or tort behind that death is not discovered until sometime after the date of death. (The "certain instances" of course being those in

which the failure to learn of the negligent aspect of the death was reasonably justifiable under the circumstances.)

The origin of the defense contended for here goes back, no doubt, as Prosser points out (Prosser on Torts §126, at 898 (4th ed. 1971)):

> "The origin of the rule that personal tort actions die with the person of the plaintiff or the defendant is rather obscure—the more so as contract actions which were equally 'personal' were held to survive the death of either. The best conjecture on the subject is that it was a result of the development of the tort remedy as an adjunct and incident to criminal punishment in the old appeal of felony and the action of trespass which succeeded it. Since the defendant could not be punished when he was dead, it was natural to regard his demise as terminating the criminal action, and tort liability with it. If it was the plaintiff who died, the early cases usually were those of homicide, for which the crown executed the defendant and confiscated all his property, so that nothing was left for tort compensation; and if not homicide, it was still to be expected that lesser crimes should be redressed by the crown rather than the successors of the deceased."

Prosser continues (§127, at 901-02) as follows:

> "When the defendant's tort was the responsible cause of the plaintiff's death, the same rather uncertain historical reasons which barred the survival of previous torts arose to prevent any new cause of action in his representative or his estate based on the death itself. If it were conceded that killing the plaintiff was a tort toward him, he was none the less dead, and the tort died with him. It is not so clear, however, that there was ever any adequate reason for denying an action to a third party, still alive, who had lost the services of the plaintiff by reason of his death; and it is possible that such an action might at one time have been maintained. But in 1808 Lord Ellenborough, whose forte was never common sense, held without citing any authority that a husband had no action for loss of his wife's services through her death, and declared in broad terms that 'in a civil court the death of a human being could not be complained of as an injury.' The decision was accepted and followed, not without dissent, in England, and notwithstanding a good start to the contrary, in the United States.
>
> The result was that it was more profitable for the defendant to kill the plaintiff than to scratch him, and that the most grievous of all injuries left the bereaved family of the victim, who frequently were destitute, without a remedy. Since this was intolerable, it was changed in England by the passage of the Fatal Accidents Act of

1846, otherwise known as Lord Campbell's Act, which has become a generic name for similar statutes."

When we consider the origin of Lord Campbell's Act—as Prosser says, a reaction against an intolerable doctrine whereby "the most grievous of all injuries left the bereaved family of the victim, who frequently were destitute, without a remedy," and the broad purpose of this ameliorative act—which was purely social in its intention, that being that "the amount recovered in every such action shall be for the exclusive benefit of the surviving spouse and next of kin of such deceased person and in every such action the jury may give such damages as they shall deem a fair and just compensation * * * to the surviving spouse and next of kin" (Ill. Rev. Stat. 1975, ch. 70, par. 2), it becomes rather difficult to maintain the severe legal distinction which allows the law to give more protection to the wounding of a man than to the ultimate disaster of his death.

Considering the magnitude of the social devastation involved in the death of the family bread winner—both economically and morally—it appears to be indeed an unfortunate accident in the development of the common law that the greater evil is given a stronger defense than the lesser, based on the survival or nonsurvival of the victim.

■■ Justice Holmes has said that the development of the common law is to be found in the "interstices of procedure" and that pithy remark is well illustrated in the case before us. The defense of the limitation of time for filing suit in this case is strictly procedural—it does not meet the merits and indeed prevents the merits from being considered. While limitations of time are often necessary to prevent injustices arising out of stale claims, their strictures must sometimes be loosened in order to give the substantive law room to develop. In our opinion there should be no barrier to the application of the "discovery" rule based on the ultimate tragedy of death where the circumstances of the death would have permitted an extension of the time limitation for the mere wounding or injury of the person and we hold that the fact of death does not *per se* foreclose the use of the discovery doctrine.

But there is another point of grave import to be decided before any consideration can be given to the discovery rule. The discovery doctrine is one founded on reason and common sense and has been developed to further justice. It is, therefore, a doctrine which should be invoked sparingly and viewed with caution. It is an exception to the usual rule and as such the plaintiff must bring himself within its intent to make it available in his cause. In the case before us the defendants say that whatever the arguments may be in the abstract as to the application of the discovery rule where the victim has died, in this particular case the plaintiff is not entitled to its benefits because she did not act with that "reasonable diligence" set out in section 21.1 of the Limitations Act or, to

use the wording of the *Lipsey* decision, she did not act within the proper time after "she should reasonably have learned" of the injury. The defendants point out that the plaintiff was given a death certificate showing the date and cause of her husband's death and they maintain that if she had demanded the hospital records at that time, or within 2 years of his death, she would have learned the same facts she learned later and that since the hospital records were available she simply did not comply even with the liberal standards of the discovery rules in that she did not act with reasonable diligence.

It is a sound and wholesome doctrine that the law is not designed to aid the slothful in evading the results of their own negligence; therefore, this contention of the defendants must be carefully considered in the light of the facts as shown by the record. If the facts were such as to indicate a lack of reasonable diligence, the discovery rule cannot be invoked in any event for the doctrine cannot be applied willy-nilly to any case that comes along, even where the claimant has, from indifference or lack of faith in his cause, slept on his rights.

On the other hand, however, we must be practical in considering the widow's situation and what is "reasonable diligence" for a recently bereaved widow with four minor children, and this is not a very high standard of diligence so far as gathering material with which to prosecute a lawsuit is concerned. We can assume that she did not, following her husband's death, have any reason to doubt the diagnosis of a perforated ulcer, which so far as we can discern from the record, was the initial diagnosis. The laparotomy was apparently incidental to this diagnosis since it involved an excision of a part of the abdominal wall. The plaintiff's affidavit saying she was not informed and was not aware of the location of the exploratory laparotomy and that no doctors or hospital staff members disclosed to her that her husband had died of a perforated esophagus after being treated for an ulcer, was not contradicted since there was no evidence to the contrary and at least the allegations as to her lack of knowledge must be taken as true for purposes of the motion to dismiss.

It is true that the death certificate disclosed the cause of plaintiff's husband's death as "Mallory Weiss Syndrome," but it is a rather cruel hoax to deny a widow and four minor children an opportunity to test their case on the merits because the widow failed to decipher this medical term. Those of us who are familiar with the law are aware of how little the technical stock phrases we sometimes employ convey to the ordinary layman. It is like a lawyer telling a client that he lost his case on the basis of the *Pedrick* rule or that he does not come within the principles of *Suvada*. It is one thing to say that the doctor or hospital is not required to affirmatively disclose an error in a diagnosis or treatment reflecting

an honest mistake in judgment and that this does not amount to fraudulent concealment. It is an entirely different thing to say that the doctor or hospital has a right to set up the barrier of the statute of limitations to keep the facts from being known, if the patient's widow fails to discover that an error has been made, within two years' time.

It would be an entirely different matter if the death certificate had been rendered in plain English or if the doctor had explained the actual cause of death in lay terms. The plaintiff contends, and there is no reason discernible from reading the record to doubt, that the doctors and the hospital failed to do this. The diagnosis was at variance with the actual facts and the copies of the medical reports accompanying the plaintiff's motion and brief in opposition to the motion to dismiss reveal a "secondary" diagnosis of pulmonary embolism and/or infarction and congestive heart failure in addition to "Diagnosis #1," which was the ulcer diagnosis for which the laparotomy was performed. Because the widow did not within 2 years translate "Mallory Weiss Syndrome" into a discrepancy between the treatment and the actual illness is hardly a reason to deny her a right to try her case. It is not contended that the hospital and medical records have somehow disappeared or have been lost by the passage of this time and that the defendants, due to the passage of time, are impaired in their defense. The defense the defendants invoke here might quite possibly have been unnecessary had the facts been disclosed in plain language to begin with, for in that case the widow might have brought her action within the statutory period and the defendants could then have proved their defense on the merits, if they had a meritorious defense. We think it was natural and understandable for the widow to have disregarded the technical reference in the death certificate and to have relied on what she had already been told was the cause of her husband's illness, as being the cause of his death. That she did not suspect a discrepancy that had not been revealed to her is rather a tribute to the normal attitude of trust and confidence in the relationship between doctor and patient.

We reject the idea that no wrongful death action can ever be brought more than 2 years after the plaintiff knows of the death in question and also the idea that in this case an obscure medical phrase was sufficient to reverse a whole trend of thinking and behavior and alert the widow to her possible cause of action. Nor do we see any real injustice to the defendants by the delay. They are as well able now, with records and medical testimony, to defend themselves, as they were at any earlier date, within 2 years of the decedent's death. We would not encourage this type of action and only in rare cases this long delay, but we think the circumstances here are unique and we believe the policy of the law mandated by the statute of limitations is founded on equity and does not

dictate cutting off the opportunity of the widow and children to be heard in this particular case.

We find it unnecessary here to consider the contention of the plaintiff that the minor children's right to pursue a wrongful death action is preserved until 2 years after their attaining the age of 18, as provided in the amendment to section 21.1 of the Limitations Act, effective September 1976. In this connection we note the recent opinion of *Arnold Engineering, Inc. v. Industrial Com.* (1978), 72 Ill. 2d ___, but we find it unnecessary to decide the applicability of this opinion to the case before us.

Pursuant to Supreme Court Rule 366(a)(5) (Ill. Rev. Stat. 1975, ch. 110A, par. 366(a)(5)), and for the reasons heretofore set forth, we hereby dismiss count IV of the amended complaint. The judgment of the circuit court of Kane County dismissing counts I, II and III of the amended complaint is hereby reversed and the cause is remanded to the trial court for further proceedings, not inconsistent with this opinion.

Reversed in part and remanded.

NASH and WOODWARD, JJ., concur.