2015 IL App (3d) 130613

Opinion filed April 10, 2015
Modified Opinion Upon Denial of Rehearing filed June 15, 2015

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2015

| | | |
|---|---|---|
| RANDALL W. MOON, Executor of the Estate of Kathryn Moon, Deceased, | ) ) ) | Appeal from the Circuit Court of the 10th Judicial Circuit, Peoria County, Illinois. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | Appeal No. 3-13-0613 Circuit No. 13-L-69 |
| CLARISSA F. RHODE, M.D., and CENTRAL ILLINOIS RADIOLOGICAL ASSOCIATES, LTD., | ) ) ) | |
| | ) | Honorable Richard D. McCoy |
| Defendants-Appellees. | ) | Judge, Presiding. |

JUSTICE SCHMIDT delivered the judgment of the court, with opinion.
Presiding Justice McDade concurred in the judgment and opinion.
Justice Lytton dissented, with opinion.

**OPINION**

¶ 1        Over three years after his mother Kathryn Moon's death, plaintiff, Randall Moon, as executor, filed a wrongful death and survival action against defendants, Dr. Clarissa Rhode and Central Illinois Radiological Associates, Ltd. Defendants filed a motion to dismiss plaintiff's complaint, alleging that the complaint was untimely. The trial court granted defendants' motion.

¶ 2        Plaintiff appeals, arguing that the trial court erred in granting defendants' motion. Specifically, plaintiff contends that the discovery rule applied and that the statute of limitations

did not begin to run until the date on which he knew or reasonably should have known of defendants' negligent conduct.

¶ 3                                    BACKGROUND

¶ 4        Ninety-year-old Kathryn Moon was admitted to Proctor Hospital on May 18, 2009.  Two days later, Dr. Jeffery Williamson performed surgery on Kathryn.  Williamson attended to Kathryn from May 20 through May 23, 2009.  Kathryn was under Dr. Jayaraji Salimath's care from May 23 through May 28, 2009.  She died on May 29, 2009.

¶ 5        During Kathryn's hospitalization, she experienced numerous complications, including labored breathing, pain, fluid overload, pulmonary infiltrates, and pneumo-peritoneum.  Pursuant to Dr. Salimath's order, Kathryn underwent CT scans on May 23 and May 24, 2009.   Dr. Clarissa Rhode, a radiologist, read and interpreted the two CT scans.

¶ 6        The court appointed plaintiff, an attorney, as executor of Kathryn's estate in June of 2009.  Eight months later, in February 2010, plaintiff executed a Health Insurance Portability and Accountability Act (HIPAA) (42 U.S.C. § 201 (2006)) authorization to obtain Kathryn's medical records from Proctor Hospital.  Plaintiff received the records in March of 2010.  In April of 2011, 14 months after receiving the records, plaintiff contacted a medical consulting firm to review Kathryn's medical records.  At the end of April 2011, plaintiff received a verbal report from Dr. Roderick Boyd, stating that Williamson and Salimath were negligent in treating Kathryn.  On May 1, 2011, plaintiff received a written report from Boyd setting forth his specific findings of negligence against Williamson and Salimath.

¶ 7        On May 10, 2011, plaintiff filed a separate medical negligence action against Drs. Williamson and Salimath.  On March 8, 2012, plaintiff testified at his deposition that "even

2

though [my mother] was fairly old, my impression was that she was doing okay and that, you know, she should have gotten better treatment than she did."

¶ 8　　　　In February of 2013, almost four years after decedent's death and almost three years after receipt of her medical records, plaintiff sent radiographs to Dr. Abraham Dachman for review. On February 28, 2013, Dachman reviewed the May 24, 2009, CT scan. Dachman provided plaintiff with a report stating that the radiologist who read and interpreted the CT scan failed to identify the breakdown of the anastomsis, which a "reasonably, well-qualified radiologist and physician would have identified." Dachman further stated that the radiologist's failure to properly identify the findings caused or contributed to the injury and death of the patient. On March 18, 2013, plaintiff filed both wrongful death and survival claims against Dr. Rhode and her employer, Central Illinois Radiological Associates, Ltd. Plaintiff alleged that he did not discover that Rhode was negligent until Dachman reviewed the CT scan.

¶ 9　　　　Defendants filed a motion to dismiss pursuant to section 2-619(a)(5) of the Code of Civil Procedure (the Code) (735 ILCS 5/2-619(a)(5) (West 2010)), arguing that the two-year statutes of limitations for both wrongful death and survival actions had expired. Alternatively, defendants argued that even if the discovery rule applied, the record affirmatively showed that the complaint was nevertheless untimely filed. The trial court granted defendants' motion to dismiss and found that the date of Kathryn's death was the "date from which the two-year statute should be measured." The court furthered stated that "even if we give everybody the benefit of the doubt and try to fix a date at which a reasonable person was placed on inquiry as to whether there was malpractice, even that was long gone by the time the complaint was filed."

¶ 10　　　　Plaintiff appeals. We affirm.

¶ 11　　　　　　　　　　　　　　　　ANALYSIS

3

¶ 12    Plaintiff argues that the trial court erred in granting defendants' motion to dismiss. The discovery rule, says plaintiff, allowed him to file his complaint within two years from the time he knew or should have known of the negligent conduct. Defendants argue that the discovery rule does not apply and plaintiff had to file his complaint within two years from Kathryn's death. Alternatively, defendants argue that even if the discovery rule applied, the record affirmatively showed that plaintiff filed the complaint more than two years after a reasonable person knew or should have known of the alleged negligent conduct.

¶ 13    We review *de novo* the trial court's order granting a motion to dismiss. *Kedzie & 103rd Currency Exchange, Inc. v. Hodge*, 156 Ill. 2d 112, 116 (1993). Under the *de novo* standard, our review is independent of the trial court's determination; we need not defer to the trial court's judgment or reasoning. *Nationwide Advantage Mortgage Co. v. Ortiz*, 2012 IL App (1st) 112755, ¶ 20 (citing *People v. Vincent*, 226 Ill. 2d 1, 14 (2007)). A defendant may file a motion to dismiss an action where the plaintiff failed to commence the action within the time allowed by law. 735 ILCS 5/2-619(a)(5) (West 2010). Plaintiff's wrongful death claim was brought pursuant to the Wrongful Death Act (the Act) (740 ILCS 180/0.01 *et seq.* (West 2010)). Section 2 of the Act states that "[e]very such action shall be commenced within 2 years after the death of such person." 740 ILCS 180/2 (West 2010). Section 13-212(a), relating to suits against physicians, provides that suit shall be filed within two years of knowledge of the death (735 ILCS 5/13-212(a) (West 2010)).

¶ 14    Plaintiff relies on *Young v. McKiegue*, 303 Ill. App. 3d 380 (1999), and *Wells v. Travis*, 284 Ill. App. 3d 282 (1996), to support his position that the discovery rule applied in this case. The *Young* and *Wells* courts held that where a wrongful death claim is predicated upon a claim of medical malpractice that was not apparent to the plaintiff at the time of death, the statute of

4

limitations applicable to medical malpractice actions governs the time for filing. *Young*, 303 Ill. App. 3d at 389; *Wells*, 284 Ill. App. 3d at 286-87. These two cases also held that the discovery rule applied to wrongful death suits against physicians. We believe that to the extent both cases read into section 13-212(a) language "which is clearly not there," *Young* and *Wells* were incorrectly decided and refuse to follow them for the following reasons. See *Wyness v. Armstrong World Industries, Inc.*, 131 Ill. 2d 403, 416 (1989).

¶ 15            Section 13-212(a) of the Code governs the time constraints for medical malpractice claims (735 ILCS 5/13-212(a) (West 2010)). Section 13-212(a), in pertinent part, states:

>            "[N]o action for damages for injury or death against any physician, dentist, registered nurse or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years after the date on which the claimant *knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death* for which damages are sought in the action, whichever of such date occurs first ***."
>            (Emphasis added.) 735 ILCS 5/13-212(a) (West 2010).

¶ 16            However, section 13-212 does not create a cause of action. Instead, it merely places a limitation on the filing of medical malpractice actions. Here, plaintiff's cause of action was for wrongful death, a cause of action that did not exist at common law. *Young* and *Wells* relied on *Witherell v. Weimer*, 85 Ill. 2d 146 (1981), a *common law personal injury action*, to attach a discovery rule to a wrongful death action against a physician. A reading of *Witherell* simply does not support such a holding. The *Witherell* court read section 13-212(a) within the context

5

of the discovery rule to mean that the two-year malpractice limitations period begins to run when one knew or should have known of the injury and also knew or should have known that the injury was wrongfully caused. *Witherell*, 85 Ill. 2d at 156. However, the discovery rule cannot be found in the plain language of either the Act or section 13-212(a). Personal injury actions were born of the common (judge-made) law and are susceptible to changes by the judiciary. Not so with respect to wrongful death actions, which are creatures of the legislature. Likewise, at common law your personal injury action died with you. The Survival Act, too, is a creature of the legislature (755 ILCS 5/27-6 (West 2010)). It allows for recovery of damages the injured party could have recovered, had she survived.

¶ 17       Our supreme court stated that the discovery rule does not alter the fact that the Wrongful Death Act created a new cause of action for death in 1853. *Wyness*, 131 Ill. 2d at 413. It is well established that we will strictly construe a statute that is in derogation of the common law. *In re W.W.*, 97 Ill. 2d 53, 57 (1983). The court will not read language into a statute that is not there. *Wyness*, 131 Ill. 2d at 416; see also *People v. Perry*, 224 Ill. 2d 312, 323-24 (2007) (citing *People v. Martinez*, 184 Ill. 2d 547, 550 (1998) (the court will not read into the statute exceptions, limitations, or conditions that conflict with the expressed intent)). The General Assembly is capable of providing a limitation period based on knowledge as evident by section 13-212(a). *Wyness*, 131 Ill. 2d at 416.

¶ 18       So what did the General Assembly provide with respect to the filing of wrongful death and survival actions against physicians? It clearly provided that a claimant must file a wrongful death action within two years from the date on which "the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action, whichever of such date [*sic*] occurs

6

first." 735 ILCS 5/13-212(a) (West 2010). The required knowledge is of the death or injury, not of the negligent conduct. If the General Assembly wanted to provide a limitations period in the Act commencing when one had knowledge of the negligent conduct, it would have done so. *Wyness*, 131 Ill. 2d at 416.

¶ 19 The plain language of the Act required the plaintiff to file a wrongful death claim within two years of the date on which plaintiff knew of the death. *Greenock v. Rush Presbyterian St. Luke's Medical Center*, 65 Ill. App. 3d 266 (1978). We conclude that *Young* and *Wells* were wrongly decided. Likewise, we decline to follow similar cases such as *Coleman v. Hinsdale Emergency Medical Corp.*, 108 Ill. App. 3d 525 (1982) (The court held that the discovery rule applied to wrongful death cases; plaintiff had two years to file his claim after he discovered or should have discovered the death and its wrongful causation.), *Arndt v. Resurrection Hospital*, 163 Ill. App. 3d 209 (1987) (relying on *Coleman*, the court found that the statute of limitations for wrongful death actions began to run when plaintiff discovered that defendant's negligence contributed to the death of the decedent), and *Hale v. Murphy*, 157 Ill. App. 3d 531 (1987) (following *Coleman*, the court held that the discovery rule in the medical malpractice statute was applicable to wrongful death cases and the limitation period began when plaintiff knew or should have known of the injury and knew or should have know that the injury was wrongfully caused).

¶ 20 Applying the limitation period set forth in section 13-212(a) to the present case, plaintiff had two years from the date on which he knew or should have known of Kathryn's death to file a complaint (735 ILCS 5/13-212(a) (West 2010)). It is undisputed that plaintiff filed this action more than two years after he knew or should have known of Kathryn's death. Therefore, we need not discuss a situation where plaintiff filed a medical malpractice suit within two years of learning of a death, but more than two years after the death. Plaintiff filed a wrongful death

7

claim against defendants beyond the time allowed in either the Act (740 ILCS 180/2 (West 2010)) or the medical malpractice statute of limitations (735 ILCS 5/13-212(a) (West 2010)). The trial court did not err in granting defendants' motion to dismiss.

¶ 21   We acknowledge that some appellate courts have applied the discovery rule to wrongful death actions where circumstances surrounding the death permitted an extension of time. *Fure v. Sherman Hospital*, 64 Ill. App. 3d 259 (1978); *Praznik v. Sport Aero, Inc.*, 42 Ill. App. 3d 330 (1976). In *Praznik*, the court held that the cause of action for wrongful death did not accrue until the aircraft wreckage was discovered, despite the fact that the accident happened more than two years and eight months prior to the discovery. *Praznik*, 42 Ill. App. 3d at 337. In *Fure*, the court stated that the discovery rule is only applicable when the circumstances surrounding the death permit such an extension of time. *Fure*, 64 Ill. App. 3d at 270. The court further held that the discovery rule is an exception to the rule and should be invoked sparingly and with caution. *Id.* Here, the circumstances surrounding Kathryn's death do not support an extension of time; it is undisputed that plaintiff knew the date on which Kathryn died. See *Beetle v. Wal-Mart Associates, Inc.*, 326 Ill. App. 3d 528 (2001) (court distinguished cases applying discovery rule to wrongful death where plaintiff was aware of husband's death on the date it occurred and failed to file a wrongful death action within two years). We believe that the medical malpractice statute of limitations codifies the extension set forth in *Praznik*, at least in suits against healthcare providers. 735 ILCS 5/13-212(a) (West 2010). The clock starts ticking when the plaintiff "knew, or through the use of reasonable diligence should have known, \*\*\* of the injury or death." *Id.*

¶ 22   The dissent argues that we concluded "that the discovery rule set forth in section 13-212(a) of the Code does not apply to wrongful death or survival actions." *Infra* ¶ 32. This, of

8

course, is wrong. We do hold that section 13-212(a) applies and that the plain language of section 13-212(a) provides that the clock starts ticking upon knowledge or notice of the injury or death, not upon notice of a potential defendant's negligent conduct. The statute gives a claimant two years from the date of that knowledge or notice to figure out whether there is actionable conduct.

¶ 23        Curiously, the dissent cites in detail language from a federal district court judge to the effect that the Illinois Supreme Court desires full recovery for a decedent's family against wrongdoers and that such policies can only be effectuated if the discovery rule is applied to wrongful death cases. *Infra* ¶ 38. Both the dissent and federal district court judge fail to recognize that which the supreme court has recognized and acknowledged: that statutes in derogation of the common law have always been strictly construed. See *Wyness*, 131 Ill. 2d at 416; *In re W.W.*, 97 Ill. 2d at 57. The supreme court has specifically acknowledged that the court "will not read into a statute language which is clearly not there." *Wyness*, 131 Ill. 2d at 416. We have looked everywhere possible in section 13-212(a) and nowhere can we find the language that the dissent would have us read into the statute to the effect that the statute begins running "when plaintiff discovered *the fact of the defendant's negligence* which contributed to the death." (Emphasis in original and internal quotation marks omitted.) *Infra* ¶ 37. With all due respect to the dissent and the federal district court that the dissent cites with approval, both are applying common law rules to statutory causes of action contrary to age-old rules of statutory construction.

¶ 24        Further, the dissent states that "[f]inally, the supreme court, in *dicta*, has approved the use of the discovery rule in wrongful death cases." *Infra* ¶ 39. The dissent cites *Wyness*, 131 Ill. 2d at 413, for this proposition. In *Wyness*, a wrongful death action, the defendants were arguing that

the statute of limitations should have started running before the death because the plaintiff knew of decedent's injuries and the cause of those injuries before the death. We fail to understand how anyone could read *Wyness* to support the proposition that the common law discovery rule applies to wrongful death actions. The actual issue before the court in *Wyness* was whether the two-year limitations period of the Wrongful Death Act could be triggered by the discovery rule such that a cause of action could accrue prior to the death of plaintiff's decedent. *Wyness*, 131 Ill. 2d at 406. In fact, the *Wyness* court observed that "this court has not to date applied the discovery rule to wrongful death actions." *Id.* at 409. It still has not. The Wrongful Death Act was first enacted in 1853. The supreme court has had over 160 years to apply the discovery rule to a wrongful death action and has, to date, resisted the urge.

¶ 25     The dissent acknowledges that statutory language that is clear and unambiguous must be be given effect. *Infra* ¶ 48. Nowhere does the dissent point to any clear and unambiguous language in section 13-212(a) that the statute of limitations begins to run when the plaintiff knows or should have known of defendant's wrongful conduct which contributed to the death. That language is not in the Wrongful Death Act and it is not in section 13-212(a). If that language is to be added, it is to be added by the General Assembly, not the courts. *Wyness*, 131 Ill. 2d at 416.

¶ 26     The same is true with respect to the survival action. See 755 ILCS 5/27-6 (West 2010). Our supreme court held that the Survival Act did not create a new cause of action. *National Bank of Bloomington v. Norfolk & Western Ry. Co.*, 73 Ill. 2d 160, 172 (1978). We suppose that is true to the extent that a cause of action to recover damages for personal injury always existed. However, at common law, your cause of action died with you. *Bryant v. Kroger Co.*, 212 Ill. App. 3d 335, 336 (1991). The Survival Act, in derogation of common law, provided the

10

decedent's representative with the ability to maintain claims that the decedent would have been able to bring. We will strictly construe a statute that is in derogation of common law. *In re W.W.*, 97 Ill. 2d at 57. At the very latest, the limitations period for a survival action begins to run when the injured party dies. *Wolfe v. Westlake Community Hospital*, 173 Ill. App. 3d 608 (1988). A cause of action, for personal injury arising out of negligence, accrues at the time of the injury. *Fetzer v. Wood*, 211 Ill. App. 3d 70, 78 (1991). As stated above, section 13-212(a) governs the statute of limitations for personal injury actions against physicians; no action seeking damages for injury against a physician shall be brought more than two years after the date on which the claimant knew or should have known of the injury or death. Plaintiff cites to no authority other than *Young* and *Wells*, where the court applied the discovery rule to extend the statute of limitations of a survival action. Here, it does not matter whether the injury occurred when Dr. Rhode interpreted the CT scans or at the time of death; plaintiff failed to file his survival action within two years of Kathryn's death.

¶ 27　　　　Even if we were to apply the discovery rule, we would find, as the trial court did, that plaintiff's complaint was untimely. Our supreme court stated that " 'if knowledge of negligent conduct were the standard, a party could wait to bring an action far beyond a reasonable time when sufficient notice has been received of a possible invasion of one's legally protected interests.' " *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 415 (1981) (quoting *Nolan v. Johns-Manville Asbestos*, 85 Ill. 2d 161, 170-71 (1981)). Furthermore, the court held that "plaintiff need not have knowledge that an actionable wrong was committed." *Knox College*, 88 Ill. 2d at 415. "At some point the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved. At that point, under the discovery rule, the running of the limitations period

11

commences." *Id*. at 416. Here, plaintiff did not obtain Kathryn's medical records until eight months after her death. Plaintiff did not argue that he became possessed with new information within those eight months, which caused him to obtain the records. Furthermore, he waited 14 months after receiving the records before submitting them to a medical consultant firm. Plaintiff points to nothing to explain the delay in either obtaining the records or submitting them for review. Moreover, he did not send the reports to Dr. Dachman for review until almost four years after Kathryn's death. Plaintiff filed his complaint long after he became possessed with sufficient information, which put him on inquiry to determine whether actionable conduct was involved. The trial court did not err in granting defendants' motion to dismiss.

¶ 28    Plaintiff-appellant, along with new counsel, has filed a petition for rehearing in this court. The petition accuses this court of deciding an issue never raised in either the circuit court or before this court.

¶ 29    The predominant issue on appeal is and always has been whether the common law discovery rule was available to plaintiff-appellant. The trial court ruled that it was not, but that even if it were, plaintiff-appellant's suit was nonetheless untimely. As plaintiff-appellant is well aware, we review the trial court's judgment, not its reasoning. *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 97 (1995).

¶ 30    The gravamen of the petition for rehearing is that by discussing whether the common law discovery rule is available in a statutory cause of action, we have raised a new issue. This is not a new issue, it is simply some of our reasoning for affirming the trial court. Plaintiff-appellant suggests that the parties "never had the opportunity to weigh in on that debate nor to address the third justice on the panel on that issue." To the contrary, plaintiff-appellant not only had the opportunity, but the duty to address this issue of whether the common law discovery rule is

12

applicable to a wrongful death action. Furthermore, we explained why we agreed with the trial court that the plain language of section 13-212(a), which is applicable to even wrongful death actions against physicians, must be strictly construed. In a nutshell, plaintiff-appellant's argument in the petition for rehearing is that he can raise an issue on appeal, avoid contrary law in his brief and then cry foul when the reviewing court applies what it believes to be the correct law to the issue raised. We are well aware that this decision creates a split in the districts and, therefore, we anticipate at some point hearing from the supreme court on the issue. However, until that time, we follow the supreme court and "will not read into a statute language which is clearly not there." *Wyness*, 131 Ill. 2d at 416. If that language is to be added, it is to be added by the General Assembly, not the courts. *Id.* Petition for rehearing denied.

¶ 31                                              CONCLUSION

¶ 32          For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

¶ 33          Affirmed.

¶ 34          JUSTICE LYTTON, dissenting.

¶ 35          I dissent. The majority's conclusion that the discovery rule set forth in section 13-212(a) of the Code does not apply to wrongful death or survival actions conflicts with over 30 years of precedent (see *Advincula v. United Blood Services*, 176 Ill. 2d 1, 42-43 (1996); *Young v. McKiegue*, 303 Ill. App. 3d 380, 386 (1999); *Wells v. Travis*, 284 Ill. App. 3d 282, 287 (1996); *Neade v. Engel*, 277 Ill. App. 3d 1004, 1009 (1996); *Durham v. Michael Reese Hospital Foundation*, 254 Ill. App. 3d 492, 495 (1993); *Janetis v. Christensen*, 200 Ill. App. 3d 581, 585-86 (1990); *Cramsey v. Knoblock*, 191 Ill. App. 3d 756, 764 (1989); *Arndt v. Resurrection Hospital*, 163 Ill. App. 3d 209, 213 (1987); *Hale v. Murphy*, 157 Ill. App. 3d 531, 533 (1987); *Eisenmann v. Cantor Bros., Inc.*, 567 F. Supp. 1347, 1352-53 (N.D. Ill. 1983); *Coleman v.*

*Hinsdale Emergency Medical Corp.*, 108 Ill. App. 3d 525, 533 (1982); *In re Johns-Manville Asbestosis Cases*, 511 F. Supp. 1235, 1239 (N.D. Ill. 1981); *Fure v. Sherman Hospital*, 64 Ill. App. 3d 259, 268 (1978); *Praznik v. Sport Aero, Inc.*, 42 Ill. App. 3d 330, 337 (1976)), as well as the plain language of the statute (735 ILCS 5/13-212(a) (West 2010)).

¶ 36		The discovery rule applies to plaintiff's causes of action. I would reverse the trial court's dismissal of plaintiff's complaint.

¶ 37							I. CASE LAW

¶ 38							A. Wrongful Death Actions

¶ 39		Thirty-eight years ago, the First District applied the discovery rule to a wrongful death cause of action. See *Praznik*, 42 Ill. App. 3d at 337. Two years later, the Second District followed suit, "reject[ing] the idea that no wrongful death action can ever be brought more than 2 years after the plaintiff knows of the death in question." *Fure*, 64 Ill. App. 3d at 272. The court discussed the inequity of applying the discovery rule to personal injury actions but not wrongful death actions, concluding: "In our opinion there should be no barrier to the application of the 'discovery' rule based on the ultimate tragedy of death where the circumstances of the death would have permitted an extension of the time limitation for the mere wounding or injury of the person and we hold that the fact of death does not *per se* foreclose the use of the discovery doctrine." *Id.* at 270. The Second District reaffirmed its holding four years later, stating, "the discovery rule *** is applicable in a wrongful death case." *Coleman*, 108 Ill. App. 3d at 533. Five years after that, the Fifth District also ruled that "[s]ection 13-212 is applicable to an action brought under the Wrongful Death Act." *Hale*, 157 Ill. App. 3d at 533. The court refused to find that a decedent's date of death triggered the start of the two-year statute of limitations for a

14

plaintiff's wrongful death claim because the "[p]laintiff could have reasonably believed [the decedent's] death was the result of a nonnegligent factor." *Id*. at 535.

¶ 40       Since 1987, Illinois courts have repeatedly and consistently applied the discovery rule to wrongful death claims. See *Young*, 303 Ill. App. 3d at 386 (when a wrongful death claim is predicated on a claim of medical malpractice that was not apparent to the plaintiff at the time of death, "the time for filing a wrongful death claim will be governed by the statute of limitations applicable to medical malpractice actions under section 13-212(a) of the Code"); *Wells*, 284 Ill. App. 3d at 287 (statute of limitations for wrongful death action began to run when plaintiff learned of defendant's negligence); *Neade*, 277 Ill. App. 3d at 1009 (same); *Durham*, 254 Ill. App. 3d at 495 ("all actions for injury or death predicated upon the alleged negligence of a physician are governed by section 13-212(a)"); *Cramsey*, 191 Ill. App. 3d at 764 (when medical negligence is not known at the time of death, "the discovery rule will apply so that the limitation period begins to run when plaintiff discovered the fact of defendant's negligence, not the fact of death"); *Arndt*, 163 Ill. App. 3d at 213 (statute of limitations began running "when plaintiff discovered *the fact of the defendant's negligence* which contributed to the death of her husband, and not on the date she discovered *the fact of the death* of her husband" (emphases in original)).

¶ 41       While our supreme court has not directly decided this issue, several courts have determined that the supreme court would likely apply the discovery rule to wrongful death cases. See *Arndt*, 163 Ill. App. 3d at 213; *Eisenmann*, 567 F. Supp. at 1352-53; *Johns-Manville*, 511 F. Supp. at 1239. The Second District concluded that because a petition for leave to appeal was filed by the defendants in *Coleman* but was denied by the supreme court, "the supreme court has granted its tacit approval" of applying the discovery rule to wrongful death actions. *Arndt*, 163 Ill. App. 3d at 213. Additionally, the United States District Court for the Northern District of

15

Illinois has twice ruled that our supreme court would likely apply the discovery rule to wrongful death cases. See *Eisenmann*, 567 F. Supp. at 1352-53; *Johns-Manville*, 511 F. Supp. at 1235. The federal court in *Eisenmann* stated:

> "The Supreme Court of Illinois has expressed its desire to insure full recovery for a decedent's family against wrongdoers. [Citation.] It has also held that the 'discovery rule' is the only fair means by which a statute of limitations can be applied in a case where an injury is both slowly and invidiously progressive, and where recognition of the illness – that an 'injury' has occurred – does not necessarily enlighten the victim that 'the injury was probably caused by the wrongful acts of another.' [Citation.] Without question, the policies underlying these recent Illinois Supreme Court decisions can only be effectuated if the 'discovery rule' is said to apply to Wrongful Death cases." *Eisenmann*, 567 F. Supp. at 1352-53.

¶ 42    Finally, the supreme court, in *dicta*, has approved the use of the discovery rule in wrongful death cases, stating: "[T]he delay of the running of the limitation period accepted by the appellate court in some districts assures that a wrongful death action may be filed after death when plaintiffs finally know or reasonably should know of the wrongfully caused injury which led to death." *Wyness v. Armstrong World Industries, Inc.*, 131 Ill. 2d 403, 413 (1989).

¶ 43    Based on the foregoing well-settled case law, I dissent from the majority's refusal to apply the discovery rule to plaintiff's wrongful death claim.

¶ 44                                B. Survival Actions

16

¶ 45    Eighteen years ago, our supreme court ruled that the discovery rule applies to Survival Act claims. *Advincula*, 176 Ill. 2d at 42-43. The court reasoned that because a survival claim "is a derivative action based on injury to the decedent, but brought by the representative of a decedent's estate in that capacity," the discovery rule should apply, just as it would in any other personal injury action. *Id*. at 42.

¶ 46    Thirteen years earlier, the United States District Court for the Northern District of Illinois held that "the 'discovery rule' applies in actions brought under the Illinois Survival Act." *Eisenmann*, 567 F. Supp. at 1354. The district court found that application of the discovery rule to survival actions was consistent with the supreme court's position that "no statute of limitations will be imposed under this state's law so as to rob the victims of invidious diseases, who are unable to quickly link their injury to the perpetrator, from recourse in Illinois courts." *Id*. at 1353 (citing *Nolan v. Johns-Manville Asbestos*, 85 Ill. 2d 161 (1981)). The court stated:

> "A survivor takes the rights of the decedent – no more *and no less*. Therefore if the decedent would have had a cause of action during his lifetime, but for the invidious nature of his disease and his inability to link the injury to the wrongdoer, then that cause of action, when discovered, should survive his death. Adoption of any other rule will represent a relapse to the incongruous injustice which the Supreme Court expressly wanted to avoid when 'the injury caused is so severe that death results, [and] the wrongdoer's liability [is thereby] extinguished.' [Citation.] I do not believe the Illinois Supreme Court would impose on survivors the statute of limitations *constraints* which decedent's would have faced had

17

they lived without also allowing them the *benefits* of the 'discovery rule' which would have inured to them had their injuries not been so severe as to cost them their lives." (Emphases in original.) *Id.* at 1354.

¶ 47        Illinois appellate courts have applied the discovery rule to survival actions. See *Wells*, 284 Ill. App. 3d at 286; *Janetis*, 200 Ill. App. 3d at 585-86. This analysis is consistent with the reasoning of Professors Dobbs, Hayden and Bublick in their treatise. "The discovery rule is now familiar in personal injury statute of limitations cases. It logically applies as well in survival actions, which are merely continuations of the personal injury claim ***." 2 Dan B. Dobbs, *et al.*, The Law of Torts § 379, at 528-29 (2d ed. 2011) (citing *White v. Johns-Manville Corp.*, 693 P.2d 687 (Wash. 1985)).

¶ 48        I agree with the above reasoning and would hold that because the discovery rule would apply to a personal injury action brought by an injured party who survives, it should likewise apply to a survival action brought on behalf of an injured party who did not survive. I see no rational reason to distinguish between the two.

¶ 49                                    II.  STATUTE

¶ 50        I also dissent from the majority's decision because it conflicts with the plain language of section 13-212 of the Code.

¶ 51        The primary rule of statutory construction requires that a court give effect to the intent of the legislature. *Ming Auto Body/Ming of Decatur, Inc. v. Industrial Comm'n*, 387 Ill. App. 3d 244, 253 (2008). In ascertaining the legislature's intent, courts begin by examining the language of the statute, reading the statute as a whole, and construing it so that no word or phrase is

rendered meaningless. *Id.* Statutory language that is clear and unambiguous, must be given effect. *Id.*

¶ 52 Section 13-212 of the Code states that it applies to an "action for damages for injury or *death* against any physician *** or hospital duly licensed under the laws of this State." (Emphasis added.) 735 ILCS 5/13-212(a) (West 2010). Section 13-212 expressly refers to "damages resulting in death." *Beetle v. Wal-Mart Associates, Inc.*, 326 Ill. App. 3d 528, 536 (2001). In order to give those words meaning, section 13-212 must be applied to wrongful death and survival actions, where the damages caused by the medical professional resulted in the death of the decedent. The majority's ruling that section 13-212 does not apply to wrongful death and survival actions requires us to disregard the plain language of section 13-212 and violate the fundamental rule of statutory construction that no word or phrase should be rendered superfluous or meaningless. See *id.*

¶ 53 The majority's conclusion that the discovery rule does not apply to wrongful death and survival actions conflicts with the plain language of section 13-212 of the Code. I dissent on that basis as well.

¶ 54 III. APPLICATION OF DISCOVERY RULE

¶ 55 Since I have found that the discovery rule can be applied to wrongful death and survival actions, I must next determine whether application of the discovery rule prevents dismissal of plaintiff's case.

¶ 56 When a complaint alleges wrongful death caused by medical malpractice, the statute of limitations begins to run when the plaintiff knows or should have known that the death was "wrongfully caused." *Young*, 303 Ill. App. 3d at 388. " '[W]rongfully caused' does not mean knowledge of a specific defendant's negligent conduct or knowledge of the existence of a cause

19

of action." *Id*. Rather, it refers to "that point in time when 'the injured party becomes possessed of sufficient information concerning his [or her] injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved.' " *Id.* (quoting *Knox College v. Celotex Corp.,* 88 Ill. 2d 407, 416 (1981)).

¶ 57 Whether a party possesses the requisite constructive knowledge that an injury or death occurred as the result of medical negligence contemplates an objective analysis of the factual circumstances involved in the case. *Id*. at 390. The relevant determination rests on what a reasonable person should have known under the circumstances, and not on what the particular party specifically suspected. *Id*. The trier of fact must examine the factual circumstances upon which the suspicions are predicated and determine if they would lead a reasonable person to believe that wrongful conduct was involved. *Id*. What the plaintiff knew or reasonably should have known after viewing the medical records available and the factual circumstances presented, and whether based on that information plaintiff knew or reasonably should have known that the decedent's death may have resulted from negligent medical care, are questions best reserved for the trier of fact. *Id*.

¶ 58 When it is not obvious that death was caused by medical negligence, the statute of limitations begins to run when the plaintiff receives a report from a medical expert finding negligence against any medical professional who treated the decedent. See *Clark v. Galen Hospital Illinois, Inc.*, 322 Ill. App. 3d 64, 74-75 (2001); *Young,* 303 Ill. App. 3d at 389; *Wells,* 284 Ill. App. 3d at 287. A plaintiff need not know of a specific defendant's negligence before the limitations clock begins to run against that defendant. See *Castello v. Kalis,* 352 Ill. App. 3d 736, 748-49 (2004); *Wells,* 284 Ill. App. 3d at 289.

¶ 59    Here, Kathryn died on May 29, 2009. On May 1, 2011, plaintiff received a report from Dr. Boyd stating that Dr. Williamson and Dr. Salimath were negligent in treating Kathryn. Nine days later, plaintiff filed a medical negligence complaint against Dr. Williamson and Dr. Salimath. In February 2013, a radiologist reviewed Kathryn's May 24 CT scan and determined that Dr. Rhode was negligent. In March 2013, plaintiff filed his medical negligence complaint against Dr. Rhode and Central Illinois Radiological Associates, Ltd.

¶ 60    The relevant inquiry is not when plaintiff became aware that Dr. Rhode may have committed medical negligence but when plaintiff became aware that any defendant may have committed medical negligence against Kathryn. See *Wells*, 284 Ill. App. 3d at 287-89. Based on the circumstances in this case, a reasonable trier of fact could conclude that plaintiff did not possess sufficient information to know that Kathryn's death was wrongfully caused until May 1, 2011, when he received Dr. Boyd's report finding that Dr. Williamson and Dr. Salimath were negligent. See *Clark*, 322 Ill. App. 3d at 74; *Young*, 303 Ill. App. 3d at 389; *Wells*, 284 Ill. App. 3d at 287. "What plaintiff knew or reasonably should have known after viewing the medical records available and the factual circumstances presented, and whether based on that information plaintiff knew or reasonably should have known that [his mother's] death may have resulted from negligent medical care are questions best reserved for the trier of fact." *Young*, 303 Ill. App. 3d at 390. Because a disputed question of fact remains about when the statute of limitations began to run against defendants, I would reverse the trial court's dismissal of plaintiff's complaint. See *id.*; *Clark*, 322 Ill. App. 3d at 75.

21