# Illinois Official Reports

## Supreme Court

*Moon v. Rhode*, 2016 IL 119572

| | |
|---|---|
| Caption in Supreme Court: | RANDALL W. MOON, Appellant, v. CLARISSA F. RHODE *et al.*, Appellees. |
| Docket No. | 119572 |
| Filed | September 22, 2016 |
| Rehearing denied | November 21, 2016 |
| Decision Under Review | Appeal from the Appellate Court for the Third District; heard in that court on appeal from the Circuit Court of Peoria County, the Hon. Richard D. McCoy, Judge, presiding. |
| Judgment | Judgments reversed. <br> Cause remanded. |
| Counsel on Appeal | Michael T. Reagan, of Ottawa, and Randall W. Moon, *pro se*, of Washington, Pennsylvania, for appellant. <br><br> Craig L. Unrath, Nicholas J. Bertschy, and J. Matthew Thompson, of Heyl, Royster, Voelker & Allen, of Peoria, and Karen Kies DeGrand and Richard B. Foster, of Donohue Brown Mathewson & Smyth LLC, of Chicago, for appellees. |

Jeffrey S. Hebrank, Noel L. Smith, Patrick W. Stufflebeam, Christopher G. Allen, and Alemayehu A. Ayanaw, of HelperBroom LLC, of Edwardsville, for *amicus curiae* Illinois Association of Defense Trial Counsel.

Richard R. King, Robert John Kane, and Sherri DeVito, of Chicago, for *amicus curiae* Illinois State Medical Society and American Medical Association.

Justices                    JUSTICE THEIS delivered the judgment of the court, with opinion.

Chief Justice Garman and Justices Freeman, Thomas, Kilbride, Karmeier, and Burke concurred in the judgment and opinion.

**OPINION**

¶ 1     This appeal arises from an order of the circuit court of Peoria County granting the motion of defendants, Dr. Clarissa Rhode and Central Illinois Radiological Associates, Ltd., to dismiss as time-barred plaintiff Randall Moon's complaint brought under the Wrongful Death Act (740 ILCS 180/1 *et seq.* (West 2012)) and the Survival Act (755 ILCS 5/27-6 (West 2012)). The appellate court affirmed and held that the two-year statute of limitations for filing the complaint began to run at the time of decedent's death and not after plaintiff discovered defendants' alleged medical negligence. 2015 IL App (3d) 130613, ¶¶ 20, 32. For the reasons that follow, we reverse the judgment of the appellate court and remand for further proceedings.

¶ 2                                  BACKGROUND

¶ 3     On May 18, 2009, plaintiff's 90-year-old mother, Kathryn Moon, was admitted to Proctor Hospital in Peoria for a rectal prolapse. On May 20, 2009, Dr. Jeffrey Williamson performed a perineal proctectomy on Kathryn and, along with his associate, Dr. Jayaraj Salimath, followed her postoperatively. During Kathryn's hospitalization, she experienced numerous complications, including labored breathing, pain, fluid overload, pulmonary infiltrates, pneumoperitoneum, sepsis, and an elevated white blood cell count. On May 23, 2009, Dr. Salimath ordered computed tomography (CT) scans of Kathryn's chest and abdominal area. Dr. Rhode, a radiologist, read the CT scans on May 24, 2009. Plaintiff returned from out of state to his mother's bedside on the evening of May 27, 2009. Her oxygen levels had significantly dropped, and she was not awake or responsive. On May 29, 2009, Kathryn died in the hospital.

¶ 4     On June 9, 2009, plaintiff, an attorney and one of Kathryn's four children, was appointed as executor of his mother's estate. On February 26, 2010, plaintiff executed an authorization

to obtain Kathryn's complete medical file from Proctor Hospital, which included the CT scans. On March 10, 2010, plaintiff received the requested records.

¶ 5    On April 11, 2011, plaintiff contacted a medical consulting firm to review Kathryn's medical records. On April 21, 2011, plaintiff received Dr. Roderick Boyd's oral opinion that Drs. Williamson and Salimath were negligent in treating Kathryn after her admission to the hospital. On May 2, 2011, plaintiff received a written report from Dr. Boyd setting forth his specific findings of purported negligence against Drs. Williamson and Salimath. In the report, he was critical of the two doctors for waiting "almost a week to attempt to treat the infection and supply sufficient oxygen" to Kathryn.

¶ 6    On May 10, 2011, plaintiff filed a complaint against Drs. Williamson and Salimath alleging, *inter alia*, that they failed to diagnose and/or timely treat Kathryn's pneumonia and respiratory distress.[1] On May 8, 2012, plaintiff's discovery deposition was taken in that lawsuit. When asked in the deposition how his mother's death had affected him, he responded, "[e]ven though she was fairly old, my impression was that she was doing okay and that, you know, she should have gotten better treatment than she did."

¶ 7    Almost two years later, on February 28, 2013, Kathryn's CT scans from May 2009 were reviewed by Dr. Abraham Dachman upon plaintiff's request. On March 4, 2013, Dr. Dachman provided plaintiff with a report stating that he had reviewed the CT scans and Dr. Rhode failed to identify "large loculated extraluminal collection of fluid," which a "reasonably, well-qualified radiologist and physician would have identified." Dr. Dachman further opined that Dr. Rhode's failure to properly identify those findings caused or contributed to the injury and death of Kathryn.

¶ 8    On March 18, 2013, plaintiff filed the instant cause of action, pursuant to the Wrongful Death Act (Act) (740 ILCS 180/1 *et seq.* (West 2012)) and the Survival Act (755 ILCS 5/27-6 (West 2012)), claiming medical malpractice against Dr. Rhode and her employer, Central Illinois Radiological Associates, Ltd. Plaintiff alleged, *inter alia*, that he did not discover that Dr. Rhode had failed to diagnose the breakdown of the anastomosis until February 28, 2013, when Dr. Dachman reviewed the CT scans taken on May 23 and 24, 2009.

¶ 9    Defendants filed a motion to dismiss plaintiff's complaint under section 2-619(a)(5) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(5) (West 2012)). Defendants asserted that plaintiff's cause of action was time-barred, citing both section 13-212(a) of the Code (735 ILCS 5/13-212(a) (West 2012)) and section 2(c) of the Act (740 ILCS 180/2(c) (West 2012)), because it was filed more than two years after Kathryn's death. Defendants also argued that plaintiff had sufficient information more than two years before he filed his complaint to put him on inquiry to determine whether actionable conduct was involved. Therefore, according to defendants, even if the "discovery rule" applied, the record showed that the complaint was still untimely filed.

¶ 10    The trial court granted defendants' motion and dismissed the complaint with prejudice. The trial court held that the complaint was untimely because the date of Kathryn's death was the "date from which the two-year statute [of limitations] should be measured." The trial court further stated that "even if we give everybody the benefit of the doubt and try to fix a

---

[1]This cause of action (Peoria County, Docket No. 11 L 147) is not at issue here.

date at which a reasonable person was placed on inquiry as to whether there was malpractice, even that was long gone by the time the complaint was filed."

¶ 11    A divided appellate court affirmed. 2015 IL App (3d) 130613, ¶ 32. The appellate majority held that plaintiff was required to file his complaint within two years of the date on which he knew or reasonably should have known of Kathryn's death. *Id.* ¶ 20. Acknowledging its disagreement with other districts of the appellate court, the appellate majority found that the discovery rule contained in section 13-212(a) of the Code has no application to a wrongful death or a survival action because both causes of action were legislatively created and not found at common law. *Id.* ¶¶ 14, 16. Because plaintiff in this case had two years from the date on which he knew or should have known of Kathryn's death to file his complaint and he failed to do so, the appellate majority concluded that the trial court properly granted defendants' motion to dismiss the complaint with prejudice. *Id.* ¶ 20. With limited elaboration, the appellate majority also noted that plaintiff filed his complaint more than two years after he had sufficient information to put him on inquiry to determine whether actionable conduct by Dr. Rhode was involved. *Id.* ¶ 27. Consequently, even if the discovery rule were applied in this case, the appellate majority believed plaintiff's complaint would still be untimely. *Id.*

¶ 12    The dissenting justice wrote to highlight that the majority's conclusion that the discovery rule contained in section 13-212(a) of the Code does not apply to wrongful death or survival actions conflicts with more than 30 years of state and federal court precedent. 2015 IL App (3d) 130613, ¶ 35 (Lytton, J., dissenting). Based on the circumstances here, the dissenting justice believed that a reasonable trier of fact could conclude that plaintiff did not possess sufficient information to know that Kathryn's death was wrongfully caused until May 2011, when plaintiff received Dr. Boyd's report, in which case plaintiff's complaint, filed within two years of that date, would have been timely. *Id.* ¶ 60. Because a disputed question of fact remained about when the statute of limitations began to run against defendants, the dissenting justice would have reversed the trial court's dismissal of plaintiff's complaint. *Id.*

¶ 13    Plaintiff filed a petition for leave to appeal (Ill. S. Ct. R. 315 (eff. July 1, 2013)), which we granted. We also allowed the Illinois Association of Defense Trial Counsel, as well as the Illinois State Medical Society and American Medical Association, leave to file *amicus curiae* briefs in support of defendants. Ill. S. Ct. R. 345 (eff. Sept. 20, 2010).

¶ 14                                          ANALYSIS

¶ 15    Defendants' motion to dismiss plaintiff's complaint was brought pursuant to section 2-619(a)(5) of the Code (735 ILCS 5/2-619(a)(5) (West 2012)). When deciding a section 2-619 motion, a court accepts all well-pleaded facts in the complaint as true and will grant the motion when it appears that no set of facts can be proved that would allow the plaintiff to recover. *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 267 (2003). Specifically, under section 2-619(a)(5), a defendant is entitled to a dismissal if the "action was not commenced within the time limited by law." 735 ILCS 5/2-619(a)(5) (West 2012). Our review of an order granting a section 2-619 motion is *de novo. Henderson Square Condominium Ass'n v. LAB Townhomes, LLC*, 2015 IL 118139, ¶ 34.

¶ 16                                              I

¶ 17     We first must determine whether, as plaintiff argues, the appellate court erred in concluding that the discovery rule contained in section 13-212(a) of the Code (735 ILCS 5/13-212(a) (West 2012)) is not applicable to wrongful death and survival actions predicated upon medical malpractice.

¶ 18     A wrongful death cause of action is brought by the personal representative of the decedent to provide the surviving spouse and next of kin compensation for the pecuniary losses suffered by reason of the decedent's death. *Turcios v. The DeBruler Co.*, 2015 IL 117962, ¶ 17. In contrast, the Survival Act does not create a statutory cause of action. *Id.* It merely allows a representative of the decedent to maintain those statutory or common-law actions that had already accrued to the decedent before he or she died. *Id.*

¶ 19     This court first applied the discovery rule in *Rozny v. Marnul*, 43 Ill. 2d 54 (1969). We discussed the purpose of the rule and stated:

> "The basic problem is one of balancing the increase in difficulty of proof which accompanies the passage of time against the hardship to the plaintiff who neither knows nor should have known of the existence of his right to sue. There are some actions in which the passage of time, from the instant when the facts giving rise to liability occurred, so greatly increases the problems of proof that it has been deemed necessary to bar plaintiffs who had not become aware of their rights of action within the statutory period as measured from the time such facts occurred. [Citations.] But where the passage of time does little to increase the problems of proof, the ends of justice are served by permitting plaintiff to sue within the statutory period computed from the time at which he knew or should have known of the existence of the right to sue. [Citations.]" *Id.* at 70.

¶ 20     More recently, this court reiterated that the purpose of the discovery rule is to "ameliorate the potentially harsh effect of a mechanical application of the statute of limitations that would result in it expiring before a plaintiff even knows of his cause of action." *Henderson Square Condominium Ass'n*, 2015 IL 118139, ¶ 52.

¶ 21     Plaintiff urges us to apply the discovery rule found in section 13-212(a) of the Code to his wrongful death claim and conclude that, where a death is at issue in a medical malpractice claim, the two-year statute of limitations should begin to run only when there is knowledge of the death and the claimant also knows or reasonably should have known that it was wrongfully caused. Defendants, citing the same statutory language, assert that the date of the decedent's death should be the controlling date from which the two-year statute is measured.

¶ 22     The parties agree that the issue before us is one of statutory construction. The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent. *Hayashi v. Illinois Department of Financial & Professional Regulation*, 2014 IL 116023, ¶ 16. The most reliable indicator of the legislature's intent is the statutory language, which must be given its plain and ordinary meaning. *Id.* Where statutory provisions are clear and unambiguous, the plain language as written must be given effect without reading into it exceptions, limitations, or conditions that the legislature did not express. *Id.* Because this issue presents a question of law, our review also proceeds *de novo*. *Schultz v. Performance Lighting, Inc.*, 2013 IL 115738, ¶ 12.

¶ 23     Section 13-212(a) of the Code, relied upon by the parties, states:

"Physician or hospital. (a) Except as provided in Section 13-215 of this Act, no action for damages for injury or death against any physician, dentist, registered nurse or hospital duly licensed under the laws of this State, whether based upon tort, or breach of contract, or otherwise, arising out of patient care shall be brought more than 2 years after the date on which the claimant knew, or through the use of reasonable diligence should have known, or received notice in writing of the existence of the injury or death for which damages are sought in the action, whichever of such date occurs first, but in no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death." 735 ILCS 5/13-212(a) (West 2012).

¶ 24    Pursuant to the plain language of section 13-212(a) of the Code, within a four-year statute of repose, any claim of malpractice against a physician or hospital must be filed within two years of the date on which the claimant knew, or through the use of reasonable diligence should have known, of the existence of the injury or death for which damages have been sought.

¶ 25    Defendants assert that this statutory language omits any hint of the discovery of wrongful conduct in a wrongful death action.

¶ 26    This court has already interpreted the meaning of the word "injury" within the context of this provision of the Code. See *Witherell v. Weimer*, 85 Ill. 2d 146, 153-54 (1981). In *Witherell*, we recognized that where substantial intervals exist between the time at which a plaintiff should have known of the physical injury and the time at which he should have known that it was negligently caused, the definition of "injury" as including or excluding its wrongful causation becomes significant. *Id.* at 155. We further recognized that it had been suggested that we had left unresolved the question of whether the statute is triggered by the plaintiff's discovery of the injury or not until discovery of the negligence where, as alleged by the plaintiff, knowledge of her injury substantially preceded knowledge of its cause. *Id.* In answering this question, we concluded: "[t]he statute starts to run when a person knows or reasonably should *know of his injury and* also knows or reasonably should know that *it was wrongfully caused.*" (Emphases added.) *Id.* at 156.

¶ 27    We are now tasked with determining whether under section 13-212(a) of the Code the term "death" in the phrase "injury or death" should receive a different construction than our interpretation of "injury" in the same sentence. We agree with plaintiff that no cognizable reason exists for us to interpret "death" in a different manner than we have already interpreted "injury" in that sentence. We therefore conclude, consistent with our statutory interpretation in *Witherell*, that the statute of limitations in a wrongful death action alleging medical malpractice begins to run when a plaintiff knows or reasonably should know of the death and also knows or reasonably should know that it was wrongfully caused.

¶ 28    Consequently, as our appellate court has held, relying upon our rationale in *Witherell*:

        "The effect of applying the discovery rule in wrongful death cases based upon medical malpractice is to toll the limitations period until the plaintiff knows or should have known of the wrongful cause of the death for which relief is being sought. Thus, knowledge of the death does not commence the statute of malpractice limitations. Rather, the malpractice limitations period begins to run when the plaintiff knows or

should have known not only of the death, but also that the death was wrongfully caused." *Young v. McKiegue*, 303 Ill. App. 3d 380, 387 (1999).

¶ 29 Although not a basis for the appellate court's decision, defendants also rely upon the limitations period contained in section 2(c) of the Act (740 ILCS 180/2(c) (West 2012)). This section of the Act provides, in pertinent part, that "[e]very such action shall be commenced within 2 years after the death of such person." 740 ILCS 180/2(c) (West 2012).[2] We do not find, however, that this provision controls the statute of limitations issue here. Plaintiff's wrongful death case was predicated upon medical malpractice, and as such, we find the more specific statute of limitations relating to medical malpractice must control. See *Abruzzo v. City of Park Ridge*, 231 Ill. 2d 324, 346 (2008) ("[w]hen a general statutory provision and a more specific one relate to the same subject, we will presume that the legislature intended the more specific statute to govern").

¶ 30 We also presume that the legislature intended section 13-212(a) of the Code to govern this wrongful death claim because the language contained therein specifically provides that "in no event shall such action be brought more than 4 years after the date on which occurred the act or omission or occurrence alleged in such action to have been the cause of such injury or death." 735 ILCS 5/13-212(a) (West 2012). If the legislature had intended for the statute of limitations period contained in section 2(c) of the Act to control plaintiff's cause of action, the language in section 13-212(a) of the Code would be superfluous, as all wrongful death claims alleging medical malpractice would have to be brought no later than two years after the decedent's death. See *In re Detention of Lieberman*, 201 Ill. 2d 300, 308 (2012) (when interpreting a statute, each word, clause, and sentence, if possible, must be given reasonable meaning and not rendered superfluous).

¶ 31 Our determination today is also supported by the weight of appellate authority in Illinois over the past 38 years. A long line of appellate court decisions, beginning with *Fure v. Sherman Hospital*, 64 Ill. App. 3d 259 (2d Dist. 1978), have applied the discovery rule to wrongful death cases alleging medical malpractice. See, *e.g.*, *Young*, 303 Ill. App. 3d 380 (1st Dist.); *Wells v. Travis*, 284 Ill. App. 3d 282 (2d Dist. 1996); *Neade v. Engel*, 277 Ill. App. 3d 1004 (2d Dist. 1996); *Durham v. Michael Reese Hospital Foundation*, 254 Ill. App. 3d 492 (1st Dist. 1993); *Cramsey v. Knoblock*, 191 Ill. App. 3d 756 (4th Dist. 1989); *Arndt v. Resurrection Hospital*, 163 Ill. App. 3d 209 (1st Dist. 1987); *Hale v. Murphy*, 157 Ill. App. 3d 531 (5th Dist. 1987); *Coleman v. Hinsdale Emergency Medical Corp.*, 108 Ill. App. 3d 525 (2d Dist. 1982).

¶ 32 In fact, with the sole exception of *Greenock v. Rush Presbyterian St. Luke's Medical Center*, 65 Ill. App. 3d 266 (1st Dist. 1978), which no reported case prior to the appellate majority below has followed for the proposition at issue here, our appellate court has consistently applied the discovery rule to wrongful death cases alleging medical malpractice.

¶ 33 In the period since *Fure* was decided in 1978, the General Assembly has amended section 13-212 of the Code and its precursor (Ill. Rev. Stat. 1991, ch. 110, ¶ 13-212) several times.

---

[2]This section of the Act was recently amended to additionally provide that "[a]n action may be brought within 5 years after the date of the death if the death is the result of violent intentional conduct or within one year after the final disposition of the criminal case if the defendant is charged with [one of the enumerated criminal offenses]." Pub. Act 99-587, § 5 (eff. Jan. 1, 2017).

See Pub. Act 82-783, art. III, § 43 (eff. July 13, 1982); Pub. Act 83-235, § 1 (eff. Sept. 8, 1983); Pub. Act 85-18, § 1 (eff. Jan. 1, 1988); Pub. Act 85-907, art. II, § 1 (eff. Nov. 23, 1987); Pub. Act 86-1329, § 4 (eff. Jan. 1, 1991). Despite these numerous amendments, the legislature has not amended the language in a way that would indicate a disagreement with our appellate court's consistent and repeated construction of the statute. As this court has recognized, "the judicial construction of the statute becomes a part of the law, and the legislature is presumed to act with full knowledge of the prevailing case law and the judicial construction of the words in the prior enactment." *People v. Villa*, 2011 IL 110777, ¶ 36; see also *In re Marriage of Mathis*, 2012 IL 113496, ¶ 25; *Hubble v. Bi-State Development Agency of Illinois-Missouri Metropolitan District*, 238 Ill. 2d 262, 273-74 (2010). We find this legislative acquiescence further supports our statutory interpretation that the limitations period for wrongful death actions claiming medical malpractice begins to run when the plaintiff knows or should have known not only of the death but that it was wrongfully caused.

¶ 34    We next consider whether the discovery rule is also applicable to plaintiff's Survival Act claim.

¶ 35    Section 13-209(a) of the Code contains the statute of limitations for such actions and provides: "If a person entitled to bring an action dies before the expiration of the time limited for the commencement thereof, and the cause of action survives: *** an action may be commenced by his or her representative before the expiration of that time, or within one year from his or her death whichever date is the later." 735 ILCS 5/13-209(a) (West 2012).

¶ 36    The parties only address the applicability of the discovery rule to plaintiff's survival action briefly, both relying upon this court's decision in *Advincula v. United Blood Services*, 176 Ill. 2d 1 (1996). Plaintiff relies on it for the proposition that this court has already applied the discovery rule to survival actions and that he, as decedent's representative, timely filed the complaint under section 13-212(a) of the Code within two years of his discovering defendants' wrongdoing. Defendants rely upon *Advincula* to advance their argument that the date the deceased learns of his or her injury, not the date the representative discovers it, should control the limitations period.

¶ 37    In *Advincula*, the plaintiff, as the administrator of the estate of her husband, brought a survival action against the defendant alleging that it had negligently failed to screen HIV-contaminated blood, resulting in her husband's contraction of AIDS and his eventual death some four years after he had received the transfusion. *Id.* at 11. The defendant argued that the plaintiff's claim was time-barred by the two-year statute of limitations applicable to personal injury actions. *Id.* at 41. We rejected this argument and held that the statute of limitations period in a Survival Act claim is triggered on the date that the decedent discovers the injury. *Id.* at 42. Because the plaintiff filed the cause of action less than two years after the decedent learned that he had contracted AIDS, the plaintiff's claim was not time-barred. *Id.* at 43.

¶ 38    In reaching this determination, we reiterated that the Survival Act does not create a statutory cause of action. *Id.* at 42. "It merely allows a representative of the decedent to maintain those statutory or common law actions which had already accrued to the decedent before he died." *Id.* Consequently, for purposes of triggering the statutory limitations period, it is the date the deceased learns of his injury that is controlling. *Id.*

¶ 39    *Advincula* instructs that the representative steps into the shoes of the decedent and takes the rights of the decedent. If the decedent could not pursue a cause of action if he or she had survived because it would have been time-barred, neither can the representative. In *Advincula*, the decedent discovered the defendant's alleged negligence prior to his death, and his wife, as his representative, timely filed the cause of action within two years of the discovery date. Here, it is undisputed that Kathryn was nonresponsive prior to her death in the hospital, which occurred just a few days after Dr. Rhode interpreted the CT scans. Under such circumstances, it is axiomatic that only Kathryn's representative would be in a position to discover any wrongdoing on the part of her medical providers. Consistent with our holding in *Advincula*, we see no reason, and defendants provide us with none, to impose the statute of limitations constraints that the decedent would have faced had she lived on plaintiff as the representative without also allowing the benefits of the discovery rule that she would have been entitled to if her alleged injuries had not been so serious as to lead to her death.

¶ 40    For these reasons, we conclude that the discovery rule found in section 13-212(a) of the Code is applicable to plaintiff's wrongful death and survival action alleging medical malpractice.

¶ 41                                            II

¶ 42    Having determined that the discovery rule tolls the statute of limitations in this case, we now turn to whether, as defendants suggest, plaintiff's complaint was still untimely as a matter of law because it was filed more than two years after he was on notice of defendants' alleged medical negligence.

¶ 43    The two-year limitations period in section 13-212(a) of the Code "starts to run when a person knows or reasonably should know of his injury and also knows or reasonably should know that it was wrongfully caused." *Witherell*, 85 Ill. 2d at 156. When that occurs, "the burden is upon the injured person to inquire further as to the existence of a cause of action." *Id.* The term "wrongfully caused" does not mean knowledge of a specific defendant's negligent conduct or knowledge of the existence of a cause of action. *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 416 (1981). Instead, the term refers to that point in time when "the injured person becomes possessed of sufficient information concerning his injury and its cause to put a reasonable person on inquiry to determine whether actionable conduct is involved." *Id.*

¶ 44    "The question of when a party knew or reasonably should have known both of an injury and its wrongful cause is one of fact, unless the facts are undisputed and only one conclusion may be drawn from them." *Henderson Square Condominium Ass'n*, 2015 IL 118139, ¶ 52. This court has emphasized, however, that "[i]n many, if not most, cases the time at which an injured party knows or reasonably should have known both of his injury and that it was wrongfully caused will be a disputed question to be resolved by the finder of fact." *Witherell*, 85 Ill. 2d at 156.

¶ 45    Plaintiff advances that he did not have a reasonable basis to know that there might have been some wrongful conduct in this case until he received the first medical expert's report on May 2, 2011. He asserts that his complaint was therefore timely filed on March 18, 2013, less than two years later.

¶ 46    In *Knox College*, cited by plaintiff, this court held that it was unable to determine, as a matter of law, whether the plaintiff's knowledge that the roof at issue leaked almost as soon as it was completed would put a reasonable person on notice as to a defect in the roof, since leaks of the particular type experienced by the plaintiff at that particular stage might be common and easily corrected. *Knox College*, 88 Ill. 2d at 417. Consequently, this court concluded that it was necessary to remand to the trial court for a factual determination of when the statute of limitations began to run. *Id.* at 429.

¶ 47    Likewise, in *Nolan v. Johns-Manville Asbestos*, 85 Ill. 2d 161 (1981), this court refused to say, as a matter of law, whether the plaintiff had sufficient information of his injury to place him on notice, even though he knew he had lung problems and, later, pulmonary fibrosis years before he was medically diagnosed as having asbestosis and then told by a doctor that it resulted from exposure to asbestos material at work. *Id.* at 171-72. As in *Knox College*, this court remanded the case to the trial court for a factual determination concerning the statute of limitations. *Id.* at 172.

¶ 48    In contrast, in *Witherell*, we held that the plaintiff knew or reasonably should have known, as a matter of law, of the possibility that her injury had been caused by actionable conduct of the defendant drug manufacturer more than five years prior to her filing the lawsuit. *Witherell*, 85 Ill. 2d at 157. There, the plaintiff began to experience problems with her leg shortly after taking the birth control pill prescribed by her doctor and manufactured by the defendant Ortho. *Id.* at 156. Plaintiff was hospitalized for this condition in 1967 and after her release asserted that she experienced excruciating pain in her leg. *Id.* Plaintiff was told by her mother and others that the pill could cause blood clots, and she voluntarily stopped taking the pill for a month. *Id.* Plaintiff was again hospitalized in 1972 for problems with her leg. *Id.* Although the plaintiff maintained that no doctor told her prior to 1976 that she had thrombophlebitis, the plaintiff averred in her affidavit that her doctor told her in 1967 and in 1972 that she had blood clots in her leg. *Id.*

¶ 49    This court held in *Witherell*:

> "Given the severe difficulties plaintiff asserts she was having with her legs, the advice from her mother and others that the pill [manufactured by the defendant] could cause blood clots, her statement that [her doctor] told her in 1967 and 1972 that she was having blood clots in her legs but that [another doctor] was insisting the problems were muscular, it is *** inconceivable to us that a reasonable person would not have realized, at least by the time of plaintiff's second hospitalization in 1972, that she may not have been receiving proper diagnosis and treatment." *Id.* at 156-57.

Consequently, we found that the plaintiff's failure to raise any claim for the injuries she suffered within the time allowed, after she knew or reasonably should have known that her injury resulted from actionable conduct by the defendant drug manufacturer, barred her action against that defendant from proceeding. *Id.* at 157.

¶ 50    In contrast to *Witherell*, under the circumstances in this case, we find that a factual determination must be made as to whether plaintiff had sufficient information two years prior to when he filed his complaint so as to trigger the limitations period. We note the medical consulting firm first verbally reported to plaintiff on April 21, 2011, that there had been negligent conduct, leading him to file the separate lawsuit against the two other doctors on May 10, 2011, and the instant lawsuit on March 18, 2013, less than two years later.

¶ 51       We are not persuaded by defendants' reliance on plaintiff's deposition testimony in the other lawsuit for the proposition that the limitations period actually began to run, as a matter of law, on the day of Kathryn's death. Defendants' argument is based on plaintiff's testimony that while his mother was fairly old, his impression was that she was doing okay and that she should have gotten better treatment than she did. This testimony was in response to a question by plaintiff's counsel as to how he would explain to a jury the effect of his mother's death. There were no follow-up questions. Plaintiff's testimony concerning his mother's general condition and that "she should have gotten better treatment" alone cannot support a conclusion at this point in the litigation that he was on notice at the time of her death that there may have been wrongdoing with her medical treatment. We similarly reject defendants' entirely undeveloped argument that plaintiff was somehow on notice, apparently at the time he received the requested medical records on March 10, 2010, simply due to his status as an attorney with some background in medical malpractice cases.

¶ 52       Defendants argue, alternatively, that plaintiff had sufficient information concerning both Kathryn's death and a potential wrongful cause no later than February 26, 2010, the date that plaintiff ordered his mother's medical records, and that he did not file his complaint until three years later. It is entirely unclear from the record, however, what prompted plaintiff to initially order his mother's complete medical records less than a year after she died and then to contact a medical consulting firm. All such factual issues can be explored on remand.

¶ 53       Consequently, as in *Knox College* and *Nolan,* we reject defendants' argument that only one conclusion may be drawn from the record here. Instead, we conclude that a factual determination must be made as to when the statute of limitations began to run in this case. Based upon the record before us, all we know is that plaintiff filed his lawsuit less than two years after receiving the initial verbal medical expert report on April 21, 2011, and within the four-year statute of repose contained in section 13-212(a) of the Code. Although plaintiff may not be successful on remand, we cannot hold, as a matter of law, that the two-year statute of limitations had expired prior to when plaintiff filed his complaint on March 18, 2013.

¶ 54                                   CONCLUSION

¶ 55       Accordingly, the judgment of the appellate court affirming the circuit court's dismissal of plaintiff's complaint is reversed. This cause is remanded to the circuit court for further proceedings consistent with this opinion.

¶ 56       Judgments reversed.

¶ 57       Cause remanded.